GOGATE, APPELLANT, *v.* OHIO STATE UNIVERSITY, APPELLEE.

(No. 87AP-342—Decided
December 23, 1987.)

*Mary Jo Cusack,* for appellant.
*Anthony J. Celebrezze, Jr.,* attorney general, *Moots, Cope & Kizer Co., L.P.A.,* and *Stephen P. Samuels,* for appellee.

REILLY, J. This is an appeal from a judgment of the Court of Claims.

Plaintiff, Anand B. Gogate, was employed by defendant, the Ohio State University, in the Department of Architecture as an assistant professor in September 1981 on a tenure track. Plaintiff was informed in January 1983 that his contract would not be renewed beyond June 30, 1984 and his employment would be terminated as of that date. He applied for tenure in August 1982 pursuant to the requirements of the university. Plaintiff's tenure package was submitted to the Promotion and Tenure Review Committee (hereinafter "committee").

The committee reviewed and considered the material and subsequently voted two for tenure, one against, and three abstained. The recommendation by the committee was sent to the Acting Chair of the Department of Archi-

tecture, Professor Paul Young, for his consideration. Dr. Young notified plaintiff in writing, on December 22, 1982, that his qualifications did not meet the criteria for tenure as defined by the faculty members of the Department of Architecture.

Professor Young's decision was reviewed by Dr. Jerrold Voss, Director of the School of Architecture, and by Dr. Donald Glower, Dean of the College of Engineering. Both agreed with Dr. Young's negative recommendation for tenure. Dr. Glower's letter, dated January 21, 1983, notified plaintiff that his faculty appointment would not be renewed beyond June 30, 1984.

Plaintiff challenged that decision before the Committee on Academic Freedom and Responsibility, which found in pertinent part:

"* * * [R]easonable and adequate grounds may exist for asserting improper evaluation and we are forwarding your complaint to the Faculty Hearing Committee, established pursuant to rule 3335-5-04."

Subsequently, the Faculty Hearing Committee found in relevant part:

"The members of the hearing panel are unanimous in our conclusion that while there were some infractions in departmental procedures, there is no evidence that these impaired Professor Gogate's tenure evaluation in any significant way."

Hence, the Faculty Hearing Committee recommended that a rehearing of the case be denied.

In response to plaintiff's request, the matter was reviewed by Diether Haenicke, Provost of the Ohio State University, who concurred with the decision of the Faculty Hearing Committee. The Provost stated that a rehearing of the case was not warranted and informed plaintiff that further action would not be taken. When plaintiff's one-year contract expired at the

end of the school year, it was not renewed.

Whereupon, plaintiff filed a complaint with the Court of Claims of Ohio requesting a total of $275,000 in loss of wages and damages, reinstatement, the granting of tenure, and promotion from associate professor to full professor. The trial court found for defendant, dismissed the action on the merits, and assessed the costs to plaintiff.

Plaintiff advances the following assignments of error:

"I. The court erred in failing to find that defendant, the Ohio State University, abused its discretion, acted in bad faith and infringed plaintiff's right to due process and equal protection.

"II. The court erred in applying the 1921 version of *'Robert's Rules of Order'* rather than the current *'Robert's Rules of Order, Newly Revised,'* 1981 Edition, which would have been controlling at all stages of the tenure proceedings herein.

"III. The court erred in allowing hearsay testimony as to the plaintiff's credentials."

Plaintiff's first and second assignments of error are interrelated and are considered together. Plaintiff contends that he was entitled to receive a registered letter informing him of the action of the committee, and the opportunity to submit oral or written information to the committee. Further, plaintiff alleges that the department's tenure policies were violated, as Professor Chris Yessios served on plaintiff's committee while he was being considered for a promotion from an associate professor to a full professor in the same academic year that plaintiff was being considered for tenure. Plaintiff also maintains that Dr. Young's decision to deny his application for tenure was based on considerations unrelated to plaintiff's tenure package. Finally, plaintiff asserts that

the committee was uninterested and failed to adequately consider his qualifications.

Plaintiff's assertions are primarily based on alleged procedural irregularities. Thus, the issue is whether such procedural infractions, if they occurred, substantially prejudiced plaintiff. The denial of tenure was not predicated on plaintiff's lack of qualifications, but was essentially based on his performance.

As to the alleged procedural irregularities, this court concurs with the determination of the Faculty Hearing Committee that "* * * while there were some infractions in departmental procedures, there is no evidence that these impaired Professor Gogate's tenure evaluation in any significant way."

Section H of the "Procedures and Criteria for Promotion and Tenure Review" states in part:

"* * * The relative merits of each candidate shall be discussed by the Committee and an individual vote shall be taken on each candidate, with the majority vote of those eligible to vote determining the Committee judgment. If the Committee vote is negative, the Committee Chairman shall inform the Department Chairman of the preliminary decision. The Department Chairman shall inform the candidate by registered letter of the preliminary decision and the candidate will be allowed to submit additional oral and written supporting information to the Committee within two weeks of the mailing date of the letter. * * *

"In arriving at decisions on tenure the Committee must consider not only the qualifications of the candidate but also the likely future staffing needs of the Department."

The Faculty Hearing Committee found, in pertinent part:

"Procedures require that when a vote of the Promotion and Tenure Committee is negative the candidate

be so informed and allowed to submit additional oral and written supporting evidence. Because the vote was not judged to be negative, the above procedure was not followed. It is possible that this interpretation denied the candidate the opportunity to submit additional information. We do not, however, find any violation of Department rules in this judgment by the Acting Chairman."

The Provost responded to this issue stating that "* * * [u]nder Ohio law, an abstention is properly regarded as acquiescence in favor of the prevailing opinion. * * *" He also stated that:

"* * * Mr. Young did, in fact, interpret the report from the committee as a favorable recommendation in support of tenure. All of the information available to me supports this conclusion. In fact, until your case was heard before the Committee on Academic Freedom and Responsibility, it appears that Mr. Young had never even considered the possibility that the report from the committee might be interpreted as negative. * * *"

Plaintiff objected to the trial court's application of the Revised 1921 Edition of Robert's Rules of Order. Nevertheless, regardless of whether the trial court properly applied the above source, such error, if committed, was harmless. There is no indication that the tenure review process was subject to any particular edition of Robert's Rules of Order. At any rate, an abstention was considered to be an acquiescence with the majority and Dr. Young interpreted it in that manner. The general view in Ohio is that the effect of an abstention is considered to be an acquiescence "in the action taken by the majority of those who do vote." See *Babyak* v. *Alten* (1958), 106 Ohio App. 191, 196, 6 O.O. 2d 450, 453, 154 N.E. 2d 14, 18; *State, ex rel. Shinnich,* v. *Green* (1881), 37 Ohio St. 227.

In any event, the record does not show any substantial prejudice. Plaintiff was asked at trial the following:

"Q. The committee had before it all the material appropriate for the consideration?

"A. Yes."

The record does not indicate that plaintiff had any other relevant information to submit to the committee. Furthermore, there is no evidence that additional favorable information would have persuaded those who abstained to cast their votes, and that such votes would have been positive rather than negative. It is also emphasized that the role of the committee was to submit a recommendation which would be reviewed by Dr. Young, Dr. Jerrold Voss, and Dr. Donald Glower. When Dr. Young and Dr. Voss were asked what, if any, would be the effect on their ultimate decision if all six members of the committee had voted in favor of tenure, neither responded that such an outcome would have changed their minds to deny plaintiff's application.

In sum, plaintiff has not presented evidence that, even if the committee's vote were considered negative, additional information would have resulted in an affirmative vote, and that a favorable recommendation by the committee would have been accepted by the other decision-makers in the tenure review process. This is especially noteworthy considering the reasons presented at trial by Dr. Young and Dr. Voss for denying plaintiff's application. Thus, even if procedural infractions occurred, it was not prejudicial that plaintiff was neither notified by registered mail of the committee's decision nor given the opportunity to submit additional information.

Although plaintiff is correct that the procedures and criteria for promotion and tenure review were violated by Dr. Yessios' participation on the committee, the record does not disclose that plaintiff was prejudiced

thereby. The Promotion and Tenure Guidelines for 1982/1983 state that: "During the year when any tenured associate professor is to be considered for promotion, he/she will not serve on the Review Committee." Nonetheless, Dr. Miller testified that the university rules prevail over departmental policy and, on that basis, Dr. Yessios was allowed to participate. Dr. Yessios has held a tenured position at the university for many years, and there was no conflict of interest between him and plaintiff. Further, Dr. Yessios received a favorable recommendation for promotion from the committee prior to its review of plaintiff's tenure package.

This court also does not find that the committee was careless and uninterested. The record is devoid of any evidence that the committee did not devote its full attention and consideration to carry out its responsibility of reviewing and assessing plaintiff's qualifications. There is also no evidence that the absence of one of the committee members was attributable to lack of interest or irresponsibility or that plaintiff was prejudiced by the member's nonattendance.

Moreover, plaintiff's assertion that the decision of three members of the committee to abstain indicates an abdiction of their responsibilities is not supported by the record. It was each committee member's prerogative to abstain. The reasons for an abstention are too numerous for speculation. Plaintiff, however, never presented any testimony on this issue as none of the abstaining committee members testified.

Plaintiff also objects to the fact that Russell Fling reviewed plaintiff's credentials while he allegedly was being solicited for plaintiff's job. The record indicates that Dr. Fling had been recruited without success for years by the Ohio State University to join the Department of Architecture's faculty, and was not being considered for plaintiff's position.

Plaintiff's assertion that Dr. Young's decision to deny plaintiff's application for tenure was "totally unrelated to Dr. Gogate's tenure package" is not supported by the record. Dr. Young's letter to plaintiff, dated December 22, 1982, indicates that he reviewed the material submitted in plaintiff's favor relative to the criteria for tenure. In the letter, Dr. Young stated:

"After careful review of the documents supporting your nomination for tenure and after review of the report supplied to me by the Departmental Promotion and Tenure Committee I have determined that your qualifications do not fulfill adequately the criteria for tenure as defined by the faculty members of the Department of Architecture."

The trial court set forth the criteria for tenure at pages three and four of its decision:

"The Ohio State University Handbook, which was checked by the Chairman of the Committee on Academic Freedom and Responsibility and the Rules Committee of the University Senate, provides in § 2.4, *Probationary Services, Director of Appointment:*

" 'The University does not assume any continuing obligation to review the appointment of a nontenured faculty member. Nonrenewal may be based upon such factors as changing standards of competence within a discipline, an assistant of inadequate performance or insufficient development, or any one of a number of less defined academic, financial, or policy reasons. The nonrenewal of an appointment in and of itself, however, should not carry with it the implication of either incompetence or misconduct in the part of the faculty member.'

"Further, in § 1.5.1, *General Consideration:*

" 'Recommendation for promotion and/or tenure should be based on the merit of the individual, or a consideration of comparable achievement in the faculty member's own field or in closely related fields, and on the judicious use of the fiscal resources of the department and college. Whenever possible, consideration should be given to how the nominee stands in relation to other people in his field outside the university who might be considered alternative candidates for the position.'

"The handbook also provides in § 1.5.2, *Criteria,* in pertinent part:

" 'In all instances superior intellectual attainment, in accordance with the criteria set forth below, is the crucial qualification for promotion to tenurial positions.' "

The record shows that Dr. Young believed that a candidate selected for a tenured position in the Department of Architecture should have a degree in architecture, because of the changing needs of the department. He stated that the ideal candidate should have a degree in both engineering and architecture. Nonetheless, it is definite from the record that Dr. Young's decision was based on other considerations equally significant. When asked why he disapproved plaintiff's application for tenure, Dr. Young responded:

"A. I felt that the package it was not representative of an outstanding candidate. I felt that the department needed to have tenure track people who had degrees in architecture and I suppose that summarizes the two reasons that were most important."

Dr. Young was justified in considering the future needs of the department. For example, he responded to criticism of the Architecture Department by the Accrediting Board, as follows:

"A. Well, rather than bring in people from other disciplines to add to our faculty, I looked for faculty members who had background in architecture and looked to other disciplines to supply teaching in that area as more or less consultants."

It appears that since 1982 faculty members have not been hired to a tenured position unless they had a degree in architecture. To conclude that the Department of Architecture could not respond to its changing needs and goals in its consideration of plaintiff's application for tenure is unreasonable and not supported by case law.

Dr. Young also considered other factors in making his decision, which indicates that he did not perceive plaintiff as an outstanding candidate:

"I also considered the judgments of people who had reviewed the research material, I considered the nature of the publications, I found them to be very much structural engineering oriented, a direction in research and publication that I thought was more appropriate for a civil engineering faculty member than for an architecture faculty member."

It was Dr. Young's testimony that plaintiff was not a particularly good researcher; that his publications were not outstanding or especially relevant for an architecture faculty member; that the overall assessment of those who viewed his qualifications was not highly favorable; and that plaintiff's qualifications did not meet the present or future needs and goals of the department.

Dr. Voss expressed many of the same concerns:

"A. I did not find in his research work that it was outstanding. I was a little bit concerned about some of the letters that were submitted. And I just did not feel that the kinds of things that Professor Gogate was interested in were consistent with the Department of Architecture."

It was emphasized in *Bassett* v. *Cleveland State Univ.* (1982), Court of

Claims No. 82-02100, unreported, that a court should intervene only where an administration has acted fraudulently, in bad faith, abused its discretion, or where the candidate's constitutional rights have been infringed. This court is not a super administrator concerning the assessment of a candidate's particular qualifications for tenure in the university's Department of Architecture. We concur with the court's discussion in *Kunda* v. *Muhlenberg College* (C.A. 3, 1980), 621 F. 2d 532, 548:

"* * * [I]t is clear that courts must be vigilant not to intrude into [faculty employment] * * * determination[s], and should not substitute their judgment for that of the college with respect to the qualifications of faculty members for promotion and tenure. Determinations about such matters as teaching ability, research scholarship, and professional stature are subjective, and unless they can be shown to have been used as the mechanism to obscure discrimination, they must be left for evaluation by the professionals, particularly since they often involve inquiry into aspects of arcane scholarship beyond the competence of individual judges. * * *"

Thus, we find that the trial court did not abuse its discretion. The record affirms the trial court's decision that:

"From review of all the evidence presented, there is no allegation of direct facts, or inferences therefrom, which have deprived the plaintiff of any of his rights, privileges and immunity by custom, statute, or under the state or federal constitution. The plaintiff availed himself of all possible administrative remedies to appeal the decision for non-tenure by the Department Chairperson and this court does not feel that the plaintiff was discriminated against or treated differently than any other associate professor would be in similar situations."

Therefore, plaintiff's first and second assignments of error are not well-taken.

In the third assignment of error, plaintiff contends that he was substantially prejudiced when the trial court admitted alleged hearsay testimony regarding plaintiff's credentials. Plaintiff's contention is not well-taken. Evid. R. 801(C) defines "hearsay" evidence as:

"* * * [A] statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

The statements made by Dr. Sprowl and Dr. Bishara were not offered into evidence to prove that their evaluations of plaintiff were true, but to show that Dr. Young had such conversations which affected his assessment of plaintiff's credentials. Such testimony was not hearsay and was properly admitted by the trial court. Hence, plaintiff's third assignment of error is not well-taken.

Plaintiff's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE and McCORMAC, JJ., concur.