OPINION
Plaintiff, Vassilios Galiatsatos, was hired in 1990 as an assistant professor in the Department of Polymer Science ("DPS") at The University of Akron ("the university"). The DPS offers only post-graduate degrees in polymer science and polymer engineering. Plaintiff's position was a tenure track appointment. At the time plaintiff was hired, the tenure track was six years, with a mandatory tenure review during the fifth year. In 1993, the university changed its tenure track from six years to seven years, with a mandatory tenure review in the sixth year. Faculty members hired before 1993 could elect to undergo tenure consideration in either the fifth or the sixth year.
Plaintiff was overwhelmingly approved for reappointment to his position as assistant professor in each of his first five years of employment with the university. Accordingly, he executed a series of one-year contracts, wherein the university's faculty manual was incorporated by express reference. The faculty manual sets forth the procedures for reappointment of tenure track faculty and for tenure review.
In a September 12, 1994 letter to Dr. Donald McIntyre, Chairman of the DPS, plaintiff exercised his option to be considered for promotion and tenure during his fifth year of probationary service. Plaintiff's tenure candidacy was initially reviewed by a four-member DPS faculty study committee, which, in an October 31, 1994 report, unanimously recommended plaintiff's promotion and tenure. Thereafter, on November 8, 1994, the full DPS Retention, Tenure and Promotion Faculty Committee ("RTP committee") met to address plaintiff's tenure candidacy. Because the RTP committee lacked a quorum, no vote was taken. The meeting minutes indicate that "a call for a meeting of the tenured faculty at the end of November will be made to discuss [plaintiff's] accomplishments." (Joint Exhibit 11) The minutes do not reflect that a date was set for the next meeting; however, the minutes reflect that a motion was made to vote on plaintiff's tenure candidacy in "early December."
On November 29, 1994, Dr. McIntyre issued a notice to all DPS tenured faculty members informing them that an RTP committee meeting would be held on December 2, 1994. The notice was forwarded only to DPS tenured faculty; plaintiff did not receive the notice. On December 1, 1994, Dr. McIntyre contacted plaintiff and discussed plaintiff's mentoring of two former graduate students, Mr. Chin-Chang Shen and Mr. Manoj Ajbani and, specifically, his rejection of their Master of Science theses. Plaintiff told Dr. McIntyre that he rejected both theses because they were incomplete and therefore unacceptable. Dr. McIntyre informed plaintiff that as their research advisor, plaintiff owed them a formal response on the quality of their submitted drafts, including corrections, suggestions and criticisms. During the course of the discussion, Dr. McIntyre informed plaintiff that issues regarding the mentoring of the two students, specifically his theses direction efforts, would be discussed at the December 2, 1994 meeting. Dr. McIntyre requested that plaintiff make himself available to attend the meeting to answer questions.
At the December 2, 1994 meeting, a member of the faculty study committee reported the committee's findings regarding plaintiff's satisfactory fulfillment of the tenure criteria categories of teaching, research and service. Thereafter, two members of the RTP committee raised concerns regarding plaintiff's rejection of the two student theses. Dr. McIntyre reported the results of a study he had conducted with regard to that issue. After Dr. McIntyre completed his report, the RTP committee asked plaintiff to join the meeting. In response to questions posed by the committee, plaintiff explained that the draft theses were unacceptable to him and did not constitute completed work. The committee members voiced concerns that plaintiff had provided neither student with a written response indicating deficiencies to be remedied. Thereafter, plaintiff was excused, and the meeting was opened to discussion among the committee members. The committee ultimately determined that plaintiff should provide a copy of the rejected theses for the committee's review, along with his commentary on each. The committee also determined that plaintiff should be given the opportunity to submit a written rebuttal to any negative comments expressed by either the faculty study committee or the RTP committee. Accordingly, no vote on plaintiff's tenure application was taken at the December 2, 1994 meeting.
In a December 12, 1994 letter to plaintiff, Dr. McIntyre noted that he spoke to plaintiff by telephone after the December 2, 1994 meeting and informed him of the RTP committee's request that he submit the draft theses and his written commentary by December 7, 1994. The letter further indicated that as of December 12, 1994, plaintiff had not provided the requested theses, nor had he requested additional time to prepare a written response. Dr. McIntyre further indicated that he would schedule the next committee meeting for either December 16, 1994 or January 17, 1995, depending on which date plaintiff found acceptable. He also informed plaintiff that regardless of which date was selected for the next meeting, the draft theses must be delivered to the DPS office no later than December 13, 1994. In addition to the aforementioned timetable information, the letter contained a review of what had transpired at the meeting of December 2, 1994, including a review of the RTP committee's concerns with regard to plaintiff's rejection of the theses. The letter reiterated that plaintiff was entitled to submit a written rebuttal to any statements made in either the faculty study committee report or at the December 2, 1994 RTP committee meeting.
Plaintiff responded to Dr. McIntyre's letter in writing on December 13, 1994. In his response, plaintiff indicated that he provided a copy of the draft theses, as requested by the committee. In addition, the letter contained a brief response to the RTP committee's concerns regarding his direction of the students' theses preparation efforts, wherein plaintiff noted that he should have notified the students in writing of his opinions regarding their draft theses instead of just meeting with them. On December 14, 1994, Dr. McIntyre again wrote to plaintiff, informing him that the next RTP committee meeting would be held on December 16, 1994. He further requested that plaintiff provide a chronology of the events leading to the failure of the students to get their draft theses corrected and accepted. Plaintiff provided the requested information in writing on December 15, 1994.
All but one of the tenured DPS faculty attended the December 16, 1994 meeting. Each of the members of an ad hoc committee organized by Dr. McIntyre to review the draft theses presented an oral report of their findings. Plaintiff was not present when the committee members made their presentations. The committee did not prepare a written report. Plaintiff was later invited to the meeting. Although he was not specifically informed of the ad hoc committee's findings, he was given the opportunity to respond to questions posed by the faculty. The minutes further reflect that a vote upon plaintiff's tenure application was to be conducted on December 21, 1994. The results of the tenure vote were eight against, five in favor, and one abstention.
By letter dated December 26, 1994, Dr. McIntyre informed Frank Kelley, Dean of the College of Polymer Science and Polymer Engineering, of the RTP committee's decision not to promote plaintiff. In the letter, Dr. McIntyre indicated that he supported the decision because, although plaintiff's "research productivity is good and his classroom teaching is rated excellent to good" (Joint Exhibit 24), plaintiff's research mentoring of Mr. Ajbani and Mr. Shen was inadequate.
In a December 30, 1994 letter, Dr. McIntyre informed plaintiff of the results of the RTP committee's vote and his recommendation to Dean Kelley that plaintiff not be granted tenure. The letter indicates that Dr. McIntyre enclosed the minutes of the November 8, December 2, and December 16, 1994 meetings. (Plaintiff's Exhibit 21.)
In a March 1, 1995 letter to D. J. Jamison, Senior Vice President and Provost, Dean Kelley recommended that plaintiff not be promoted to associate professor with tenure. Dean Kelley chronicled plaintiff's tenure process, which culminated in the RTP committee's decision to deny tenure based upon plaintiff's inadequate mentoring of the two graduate students. In addition, Dean Kelley independently analyzed three separate areas of plaintiff's performance — scholarship, teaching and service — and opined that in each of the three areas, plaintiff's performance was "adequate for reappointment, but not sufficient to promote." (Joint Exhibit 25.)
After independent review of plaintiff's tenure file, Provost Jamison recommended against tenure to the university's president, Peggy Elliott. At the Board of Trustees ("board") meeting on April 26, 1995, President Elliott recommended against tenure; the board affirmed that decision by voting to issue plaintiff a terminal contract for the 1995-1996 academic year.
On April 28, 1995, plaintiff formally appealed to the Appeals Committee of the College of Polymer Science and Polymer Engineering ("appeals committee"). A subcommittee comprised of five non-DPS faculty members was asked to evaluate the merits of plaintiff's appeal and to report its findings to the full appeals committee. The appeals committee included three members of the DPS in addition to the five members of the subcommittee. In a November 1995 report, the subcommittee found that procedural flaws in the mentoring investigation conducted as part of the tenure review process "might have jeopardized [plaintiff's] right to a fair and impartial hearing." (Joint Exhibit 31, page 6.) Based upon this finding, the subcommittee recommended that plaintiff be reconsidered for promotion with tenure.
After the subcommittee submitted its report, the three DPS appeals committee members filed a "minority report" with an opposing recommendation. The report concluded that the review of plaintiff's tenure candidacy was conducted in a procedurally proper manner and that plaintiff's appeal had no merit.
Upon review of both the subcommittee and minority reports, Dean Kelly decided not to change his previous adverse recommendation to the provost. Plaintiff filed an appeal with the Faculty Rights and Responsibility Committee on April 10, 1996, which ultimately determined that plaintiff had received a fair tenure review.
On October 16, 1996, plaintiff filed an amended complaint in the Court of Claims against the university and Dr. McIntyre seeking injunctive and declaratory relief as well as damages for breach of contract and intentional infliction of emotional distress. Specifically, plaintiff requested a total of $200,000 in lost wages and damages, reinstatement, the granting of tenure, and promotion from assistant professor to associate professor. Plaintiff also alleged that Dr. McIntyre was not entitled to civil immunity under R.C. 9.86.
The trial court bifurcated for trial the issues of liability and damages. A trial on liability was held on June 15-18, 1998. In a decision filed February 9, 1999, the court found that the university breached its contract with plaintiff by failing to follow written procedures set forth in the faculty manual in reviewing plaintiff's application for tenure and in failing to provide plaintiff a fair tenure review. The court ordered that plaintiff be reinstated to his former position with pay retroactive to his last day of employment and be given a new tenure review in accordance with the established faculty manual procedures. The court further found that Dr. McIntyre was immune from liability pursuant to R.C. 9.86 and 2743.02(E). The court's decision was journalized the same day.
On February 12, 1999, the university moved the court to vacate the damages portion of the judgment and to schedule a damages hearing so that the parties could put forth evidence of mitigation and/or collateral source recovery. Plaintiff filed a memorandum in opposition. On March 5, 1999, the trial court journalized an entry ordering a damages trial. Trial was held on March 2, 2000.
In a decision filed October 17, 2000, the trial court found that the relief granted plaintiff upon the completion of the liability portion of the trial, i.e., reinstatement, back pay, and tenure reevalution, was not warranted due to "animosity between the parties" and "the passage of time since plaintiff's original tenure review." (Oct. 17, 2000 Decision at 2.) The court further found that since plaintiff's subsequent earnings exceeded those he would have earned had he remained employed by the university, he was entitled to no damages. The court journalized an entry on October 17, 2000, consistent with its decision.
Plaintiff timely appealed the trial court's judgment, advancing the following four assignments of error:
 [1.] The trial court erred as a matter of law in determining that appellant was not entitled to back pay as a result of appellee's breach of contract, on account that appellant's subsequent employment in private industry was similar to appellant's former academic position with appellee, and therefore that appellant's earnings in private industry were subject to deduction from what appellant would have earned had the breach of contract not occurred.
 [2.] The trial court erred as a matter of law in failing to award appellant compensation for appellant's lost fringe benefits, future damages, lost future fringe benefits, and uncompensated miscellaneous expenses incurred as a result of appellee's breach of contract, and which were established with certainty at trial.
 [3.] The trial court erred as a matter of law and abused its discretion when, on its own motion, and in direct contravention of its previous orders, it reconsidered its award of injunctive relief to appellant, and without any evidence taken during the damages trial to support such a decision, reversed its prior order of reinstatement of appellant to appellee university for tenure reevaluation, denying appellant the opportunity to be afforded a procedurally fair tenure review.
 [4.] The trial court erred as a matter of law in determining that Donald McIntyre did not act manifestly outside the scope of his employment by his actions as department head during appellant's tenure application and review process, and therefore that McIntyre was entitled to civil immunity.
In addition, the university has filed a cross-appeal, asserting three assignments of error, as follows:
 [1.] The trial court erred when it determined that breach of contract had prejudiced the outcome of the tenure review.
 [2.] The trial court erred when it failed to apply the appropriate standard of review to an academic decision of the university.
 [3.] The trial court's conclusion that there was breach of contract sufficient to prejudice the outcome of the tenure review is contrary to the manifest weight of the evidence.
As the issues raised in the university's cross-appeal are dispositive of the instant appeal, we will address them first. Further, as the university's assignments of error each essentially challenge the trial court's finding that the university breached its contract with plaintiff by failing to comply with its own written procedures and that such breach substantially prejudiced plaintiff in his effort to obtain tenure, we will address them together.
As a general rule, courts must defer to the academic decisions of colleges and universities unless there has been "such a substantial departure from the accepted academic norms as to demonstrate that the committee or person responsible did not actually exercise professional judgment." Bleicher v. Univ. of Cincinnati College of Med. (1992),78 Ohio App.3d 302, 308. In Gogate v. Ohio State University (1987),42 Ohio App.3d 220, 226, this court cautioned trial courts to be diligent not to intrude into faculty employment determinations and not to substitute their judgment with respect to the qualifications of faculty members for promotion or tenure. Specifically, this court stated "*** a court should intervene only where an administration has acted fraudulently, in bad faith, abused its discretion, or where the candidate's constitutional rights have been infringed." Id. We further noted that determinations on such matters as teaching ability, research and service simply cannot be evaluated solely on the basis of objective factors. Id. In addition, this court recognized that when allegations of procedural violations are asserted with regard to a tenure application, a court must determine, upon review of the record, whether such violations occurred and "whether such procedural infractions, if they occurred, substantially prejudiced [the applicant]." Id.
In Gogate, the plaintiff, a tenure-track professor, contended that procedural irregularities in the tenure review process, including the failure of the faculty tenure committee to notify him by registered mail of its decision to deny tenure, and the failure to provide him an opportunity to submit additional information to the committee after the tenure vote had been taken, constituted a breach of his employment contract and that such breach substantially prejudiced his tenure candidacy. This court determined that the procedural infractions did not substantially prejudice the tenure process, since plaintiff offered no evidence that he had any other relevant information to submit to the committee had he been given such an opportunity, and no evidence suggested that additional favorable information would have persuaded those who abstained to cast their votes in favor of tenure. Id. at 223.
Although we agree with the trial court's finding that the procedural infractions committed by the university in the instant case were significantly more egregious than those reviewed by the Gogate court, we do not agree with the trial court's finding that the procedural errors substantially prejudiced plaintiff's tenure application.
The university's faculty manual provides specific guidelines for reappointment, tenure and promotion and provides, in relevant part, as follows:
(A) Procedures.
 (1) Each department shall have a set of criteria and procedures concerning *** tenure and promotion.
***
(C) Reappointment, Tenure, and Promotion.
 (1) Regardless of differences between departments *** each set of criteria and procedures should contain a general introduction, including a statement of the responsibilities and goals of the department and separate procedures on promotion, tenure, retention, including appropriate committees for each.
 (2) Each set of procedures must contain the following minimum provisions to ensure that:
 (a) Each candidate under consideration and the committee members shall receive at least two weeks written notice of the meeting. The purpose of the meeting, criteria of judgment and other details should be explained in writing.
***
 (d) The committee shall promptly furnish the candidate with a written summary of the relevant proceedings, including any conclusions, admonitions, and advice. The department head and the committee chair will subsequently review this document with the candidate. (Joint Exhibit 39, at 54-56.)
The evidence in the instant case establishes that plaintiff did not receive two weeks' advance written notice of the December 2, 1994 tenure meeting. The only written notice of the meeting was sent on November 29, 1994, to tenured faculty members only. Plaintiff testified that he never received notice of the meeting. Dr. McIntyre testified that he did not provide plaintiff with written notice of the meeting. No other trial witnesses testified that plaintiff was afforded a written copy of the notice. Two weeks' advance written notice of meetings regarding tenure candidacy is mandated under the terms of the faculty manual and the parties' agreement. Plaintiff was not informed of the meeting until December 1, 1994, only one day in advance of the meeting.
Furthermore, the evidence arguably supports the trial court's finding that the university did not promptly furnish plaintiff with the minutes of the December 2, 1994 meeting as required by the faculty manual. Plaintiff testified that he did not receive a copy of the meeting minutes until January 2, 1995, after the tenure vote was taken.
The trial court determined that plaintiff was substantially prejudiced as a result of these procedural irregularities in the tenure review process. Specifically, the trial court found that had plaintiff been properly notified of the December 2, 1994 meeting, he "could have prepared a more vigorous and effective defense." The court further found that the university's failure to timely provide a copy of the meeting minutes "further hampered [his] ability to effectively rebut the accusation of poor mentoring." Upon review of the record, we conclude that these findings are not supported by the evidence.
As noted previously, plaintiff was orally advised by Dr. McIntyre on December 1, 1994, of the general subject of the December 2, 1994 meeting, i.e., plaintiff's rejection of the draft theses, and specifically, the concern that plaintiff had not provided the students a formal written response on the quality of their submitted drafts. Plaintiff and Dr. McIntyre discussed the tenure committee's concerns at length on December 1, 1994. Plaintiff offered an explanation for his rejection of the draft theses.
As advised by Dr. McIntyre, plaintiff's rejection of the draft theses was discussed extensively at the December 2, 1994 RTP committee meeting. The committee members voiced concerns regarding plaintiff's failure to provide the students with written corrections, suggestions and/or criticisms of their work. Plaintiff's response to the committee's concerns was the same as that given to Dr. McIntyre the previous day. Plaintiff was then asked to provide a copy of both theses to the committee and was given the opportunity to submit a written rebuttal to any negative comments expressed by the committee. Plaintiff did not submit the draft theses or his written rebuttal until prompted by the December 12, 1994 letter from Dr. McIntyre. In that letter, Dr. McIntyre provided plaintiff a written overview of what had transpired at the December 2, 1994 meeting, including a reiteration of the committee's concerns with regard to his rejection of the students' theses. By way of response to the committee's concerns, plaintiff admitted that he should have notified the students in writing of his opinion regarding their theses drafts. At the December 16, 1994 meeting, the committee again concerned itself with plaintiff's rejection of the draft theses and provided plaintiff the opportunity to respond to questions posed by the committee members.
The foregoing evidence establishes that while plaintiff was not provided with written notice of the December 2, 1994 meeting or with a timely copy of the minutes of that meeting in contravention of the faculty manual, plaintiff was, from December 1, 1994 onward, well aware of the tenure committee's general concerns regarding his research mentoring of two of his graduate students and their specific concerns regarding his rejection of the students' draft theses. In addition, the evidence establishes that plaintiff was provided ample opportunity to respond to the committee's concerns, both in writing and in person before the RTP committee.
Two weeks transpired between the December 2 and December 16, 1994 RTP committee meetings, during which time plaintiff had ample opportunity to request clarification of the issues and concerns raised by the committee members, to ask questions of the committee members, and/or to provide additional information in defense of his position. Plaintiff offered no evidence, either documentary or testimonial, suggesting that he had other relevant information to submit to the committee had he received timely notice of the RTP committee meeting, or otherwise had been given the opportunity. Moreover, plaintiff offered no evidence that additional favorable evidence, or a different strategy or defense in response to the committee's concerns, would have persuaded those committee members who either abstained or voted against tenure to cast their votes in favor of tenure. Gogate, supra.
Upon review of the record, we find that the RTP committee's deliberations and inquiries led to the conclusion that plaintiff's failure to formally review the draft theses and provide the affected students with written commentary constituted a breach of teaching responsibility serious enough to negatively affect his tenure application. After careful review of the record and according due deference to the university's academic decision in regard to a tenure application, we are unable to find any substantive evidence that might arguably prove that the university's breach of contract substantially prejudiced plaintiff's tenure application. Accordingly, we conclude that the trial court's finding in that regard is against the manifest weight of the evidence. Defendant's cross-assignments of error are well-taken.
Having so found, we must reverse the trial court's February 9, 1999 judgment in favor of plaintiff and vacate the trial court's October 17, 2000 damages judgment. Accordingly, plaintiff's assignments of error regarding the damages judgment are hereby rendered moot. App.R. 12(A)(1)(c).
For the foregoing reasons, defendant's cross-assignments of error are sustained, and plaintiff's assignments of error are moot. The judgment of the Court of Claims of Ohio is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
BRYANT, P.J., and DESHLER, J., concur.