[Cite as *Fredieu v. Case W. Res. Univ.*, 2021-Ohio-1953.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOHN FREDIEU,                              :

    Plaintiff-Appellant,              :

                                  No. 109877

    v.                                :

CASE WESTERN RESERVE
UNIVERSITY,                                :

    Defendant-Appellee.               :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 10, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-912960

---

### *Appearances:*

Petersen & Petersen, and Todd Petersen, *for appellant.*

Taft Stettinius & Hollister, L.L.P., David H. Wallace, and
William A. Doyle, *for appellee.*

SEAN C. GALLAGHER, P.J.:

{¶ 1} Plaintiff-appellant, Dr. John Fredieu ("appellant") brings this appeal challenging the trial court's judgment granting summary judgment in favor of defendant-appellee, Case Western Reserve University ("CWRU"), in appellant's

breach of contract action. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} In 1998, appellant accepted a position as a full-time, nontenure-track instructor in CWRU's Department of Anatomy. In 2002, appellant applied for a tenure-track position in the Department of Anatomy as an assistant professor. Appellant was appointed as an assistant professor on the tenure track in 2003.

{¶ 3} The pretenure review period is nine years in the Department of Anatomy. The nine-year review period is necessary to enable faculty members to develop a substantial body of productive research. The final year of the nine-year pretenure review period is an "up or out" year. Pursuant to CWRU's Faculty Handbook and Bylaws, it is mandatory that a candidate be considered for tenure during the final year. If the candidate is not awarded tenure during the "up or out" year, the candidate is offered a one-year terminal appointment during which the candidate can pursue employment opportunities elsewhere.

{¶ 4} The instant appeal pertains to the circumstances under which appellant was placed on the tenure track, and the lack of financial support CWRU provided to appellant for research purposes at the time of his appointment and throughout his pretenure review period. Appellant claims that he was promised funding and support for his research and that he never received the funding or support from CWRU.

{¶ 5} There are three general criteria for an award of tenure: (1) excellence in scholarly research, (2) a high level of teaching effectiveness, and (3) accomplishment in professional service, both at the administrative and clinical levels. The Bylaws that were in effect at the time of appellant's appointment to the tenure track in 2003 permitted an extraordinary teaching record to be considered in the event a faculty member had a lack of research productivity.

{¶ 6} The Bylaws were amended in 2006. Under the amended Bylaws, it was nearly impossible to obtain an award of tenure without research productivity.

{¶ 7} In February 2011, appellant requested a three-year extension of his pretenure period. This request was denied.

{¶ 8} As a result, appellant filed a grievance with the Faculty Grievance Committee in the summer of 2011. Appellant sought to restart his tenure-track period, substantial startup funds for research, a promotion to associate professor, and a new five-year contract. The committee did not recommend that the full pretenure period be restarted. However, the committee unanimously recommended that appellant be granted (1) a three-year extension of his pretenure period, (2) meaningful relief from teaching to engage in the research necessary to achieve tenure, (3) reasonable financial support consistent with appellant's research goals and full access to the Department of Anatomy's resources. Appellant received $145,000 in funding for his research, relief from teaching, and a new research space.

{¶ 9} Appellant filed a second grievance in June 2013, alleging, in part, that the School of Medicine did not comply with the Faculty Grievance Committee's

resolution of appellant's first grievance. Appellant requested a restart of his nine-year pretenure review period. The second grievance was denied, and appellant was not granted an extension of his pretenure review period. As a result, appellant was required to submit an application for promotion and tenure.

{¶ 10} Appellant's application for a promotion and tenure was denied. The Department of Anatomy's Committee on Appointments, Promotions and Tenure (hereinafter "DCAPT"), the School of Medicine's Committee on Appointments, Promotions and Tenure (hereinafter "SOM CAPT"), and the School of Medicine's Dean, Dr. Pamela Davis, all concluded that despite his teaching and service contributions, appellant's application fell short in the areas of research, outside funding, and national recognition.

{¶ 11} Although appellant received $145,000 in research funding and a three-year extension of his pretenure review period as a result of his first grievance, the parties agreed that "it was highly improbable that appellant would have been able to produce substantive research meriting an award of tenure in that time period." *See* trial court's July 8, 2020 opinion at p. 4. Appellant left CWRU's School of Medicine and obtained a position as a science writer with the Cleveland Clinic.

{¶ 12} In Cuyahoga C.P. No. CV-19-912690,[1] appellant filed a complaint against CWRU on March 25, 2019, alleging a single cause of action for breach of

---

[1] Appellant previously filed a complaint against CWRU in August 2016 in Cuyahoga C.P. No. CV-16-867264. In July 2018, appellant voluntarily dismissed the action without prejudice pursuant to Civ.R. 41(A). Appellant refiled his breach of contract claim against CWRU that is at issue in this appeal in March 2019.

contract. The contracts at issue are CWRU's Faculty Handbook, the School of Medicine's Bylaws (2003 and 2006 versions), and the appendices therein. In his complaint, appellant alleged that CWRU's "failure and refusal to provide financial and institutional support throughout the duration of [appellant's] original and extended pre-tenure period constitutes a breach of its contract with [appellant]." Complaint at ¶ 27. Appellant asserted that CWRU breached its contract by failing to provide him with a financial "start-up package" that would have enabled him to produce the necessary research that would enable him to obtain tenure. Appellant alleged that CWRU's breach directly and proximately caused him irreparable harm and damages,

> including but not limited to loss of earnings and earning capacity, past and future lost earnings, the value of fringe and pension benefits, mental and emotional distress, embarrassment, humiliation, anxiety about the future, damage to his good name and reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue the gainful occupation of his choice.

Complaint at ¶ 28. Appellant sought damages in an amount exceeding $25,000.

{¶ 13} CWRU filed an answer on April 24, 2019. Therein, CWRU addressed the allegations in appellant's complaint and asserted nine defenses.

{¶ 14} On January 8, 2020, CWRU filed a motion for summary judgment. Therein, CWRU argued that (1) neither the Faculty Handbook nor the Bylaws require CWRU to provide start-up research funds or ongoing financial support to a faculty member during the pretenure period, (2) even if CWRU breached its contractual obligations, appellant "cannot establish, other than through

unsupportable supposition, that he would have been awarded tenure but for any such alleged breach," and (3) appellant was essentially attempting to challenge the decision denying his application for promotion and tenure, a decision to which Ohio courts afford great deference.

{¶ 15} Appellant filed a brief in opposition to CWRU's summary judgment motion on February 24, 2020. Therein, appellant emphasized the thrust of his breach of contract claim is that "CWRU failed to provide him with the funding, space and institutional support necessary to support his academic research, eliminating any possibility of tenure." Appellant further explained the basis for his breach of contract claim,

> CWRU's initial failure and subsequent refusal to provide financial and institutional support throughout the duration of [appellant's] original nine-year pre-tenure period and only limited funding halfway [into] the three-year extension of his pre-tenure period constitutes a breach of [CWRU's] contract with [appellant] and, as a result of that breach, he was denied any opportunity to obtain tenure.

{¶ 16} Appellant maintained that CWRU failed to "live up to its end of the bargain for the entire period preceding [the consideration of DCAPT]." Appellant argued that as a result of CWRU's breach (failing to provide him with a start-up package or ongoing support), CWRU (1) guaranteed that appellant's application for tenure would be denied, (2) cost appellant 12 years of his academic career, (3) affected appellant's standing in the academic community, and (4) cost appellant an opportunity at advancement and the corresponding salary increases.

**{¶ 17}** CWRU filed a reply brief in support of its summary judgment motion on March 6, 2020. Therein, CWRU argued that appellant's breach of contract claim was based on appellant's allegation that (1) any purported promises made to appellant during negotiations at the time he was appointed to the pretenure track were too indefinite to constitute a contractual commitment as a matter of law, (2) the fact that CWRU provided start-up support to two of appellant's colleagues that ultimately were awarded tenure had no bearing on the issue of whether CWRU breached its contract with appellant, and (3) appellant cannot and did not establish that he would have been awarded tenure but for CWRU's alleged breach.

**{¶ 18}** A jury trial was set for April 29, 2020. The trial date was continued, however, due to COVID-19 restrictions.

**{¶ 19}** On July 8, 2020, the trial court granted CWRU's motion for summary judgment. The trial court concluded that a genuine issue of material fact existed regarding whether CWRU fulfilled its contractual obligations. However, the trial court concluded that the existence of damages resulting from CWRU's purported breach was "entirely speculative." The trial court explained that even if CWRU provided a start-up package and support to appellant,

> it is entirely unclear what the result of that would be in terms of research productivity or the other criteria that are used for evaluating a tenure application. The only thing that can be said is that [appellant] may have presented an application that would be potentially more likely to demonstrate research excellence in addition to the teaching and service criteria.

*See* trial court's July 8, 2020 opinion at p. 13. Accordingly, the trial court held that "there is no genuine issue of material fact as to whether any potential breach of the Faculty Handbook or By-Laws caused a compensable damage to [appellant]."

{¶ 20} On August 7, 2020, appellant filed the instant appeal challenging the trial court's judgment. He assigns one error for review:

> I. The trial court erred in granting [CWRU's] motion for summary judgment when it found that no genuine issue of material fact existed as to whether any potential breach of contract by CWRU caused compensable damage to [appellant].

## II. Law and Analysis

### A. Summary Judgment

{¶ 21} In his sole assignment of error, appellant argues that the trial court erred in granting CWRU's motion for summary judgment.

### 1. Standard of Review

{¶ 22} Summary judgment, governed by Civ.R. 56, provides for the expedited adjudication of matters where there is no material fact in dispute to be determined at trial. In order to obtain summary judgment, the moving party must show that "(1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion when viewing evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party." *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219, 631 N.E.2d 150 (1994).

**{¶ 23}** The moving party has the initial responsibility of establishing that it is entitled to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). "[I]f the moving party meets this burden, summary judgment is appropriate only if the nonmoving party fails to establish the existence of a genuine issue of material fact." *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 16, citing *Dresher* at 293.

**{¶ 24}** Once the moving party demonstrates no material issue of fact exists for trial and the party is entitled to judgment, the burden shifts to the nonmoving party to put forth evidence demonstrating the existence of a material issue of fact that would preclude judgment as a matter of law. *Dresher* at *id.* In order to meet his burden, the nonmoving party may not merely rely upon allegations or denials in his or her pleadings, and must set forth specific facts, by affidavit or as otherwise provided in Civ.R. 56(E), demonstrating the existence of a genuine issue of material fact for trial. *See Houston v. Morales*, 8th Dist. Cuyahoga No. 106086, 2018-Ohio-1505, ¶ 7, citing *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Dresher* at *id.*

### 2. Tenure

**{¶ 25}** "As a general rule, courts must defer to the academic decisions of colleges and universities unless there has been 'such a substantial departure from the accepted academic norms as to demonstrate that the committee or person responsible did not actually exercise professional judgment.'" *Galiatsatos v. Univ.*

*of Akron*, 10th Dist. Franklin No. 00AP-1307, 2001 Ohio App. LEXIS 4051, 14 (Sept. 13, 2001), quoting *Bleicher v. Univ. of Cincinnati College of Med.*, 78 Ohio App.3d 302, 308, 604 N.E.2d 783 (10th Dist.1992). In *Gogate v. Ohio State Univ.*, 42 Ohio App.3d 220, 537 N.E.2d 690 (10th Dist.1987), the Tenth District cautioned trial courts to avoid intruding into faculty employment and tenure decisions, and to avoid substituting the trial courts' judgment regarding a faculty member's qualifications for promotion or tenure. *Id.* at 226; *see Saha v. Ohio State Univ.*, 10th Dist. Franklin No. 10AP-1139, 2011-Ohio-3824, ¶ 37, citing *Gogate* at 226 ("determinations on such matters as teaching ability, research, and service simply cannot be evaluated solely on the basis of objective factors."). The *Gogate* Court explained, "a court should intervene [in promotion and tenure considerations] only where an administration has acted fraudulently, in bad faith, abused its discretion, or where the candidate's constitutional rights have been infringed." *Id.*, citing *Basset v. Cleveland State Univ.*, Ohio Court of Claims No. 82-02110 (1982), unreported.

{¶ 26} In the instant matter, we initially note that the tenure review process and CWRU's decision denying appellant's application for promotion and tenure are outside the scope of this appeal. Appellant conceded in the trial court that his application for promotion and tenure was denied in good faith and that he was not alleging any irregularities pertaining to the tenure review process.

{¶ 27} The scope of this appeal is limited to the issues of whether CWRU breached its contractual obligations under the Faculty Handbook and Bylaws to

provide support and resources to appellant upon appellant's appointment to the tenure track, and whether appellant suffered damages as a result of the purported breach. After reviewing the record, we find that the trial court properly granted summary judgment in favor of CWRU because appellant failed to demonstrate the existence of a genuine issue of material fact regarding the issue of damages.

### 3. Breach of Contract

{¶ 28} In his breach of contract claim, appellant contends that CWRU breached its contract by failing to provide him with financial support and resources for research during his pretenure period. Appellant argues that CWRU was contractually obligated to provide support to appellant pursuant to the School of Medicine's Bylaws and the Faculty Handbook.

{¶ 29} To succeed on his breach of contract claim, appellant must demonstrate "the existence of a binding contract or agreement; the non-breaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the non-breaching party suffered damages as a result of the breach." *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 108, 661 N.E.2d 218 (8th Dist.1995).

{¶ 30} CWRU argued that it was entitled to summary judgment because (1) neither the Faculty Handbook nor Bylaws created a contractual right to a start-up package or research funding for faculty members placed on the tenure track, and (2) even if CWRU breached a contractual obligation to provide research funding to appellant, appellant's breach of contract claim fails because he cannot demonstrate

damages or that, but for CWRU's alleged breach, he would have been awarded tenure.

{¶ 31} In opposing CWRU's summary judgment motion, appellant argued that CWRU breached its contractual obligations by failing to provide him with financial and institutional support when he was placed on the tenure track in 2003, failing to provide him with support throughout the duration of his nine-year pretenure period, and only providing him limited funding and support halfway through the three-year extension of his pretenure period. Regarding the issue of damages, appellant alleged that not only was he denied tenure based on CWRU's breach, but he was denied any meaningful chance or opportunity of obtaining tenure.

{¶ 32} Regarding the first element, it is undisputed that a binding contractual agreement existed between appellant and CWRU. The parties' contract was comprised of the Faculty Handbook, the School of Medicine's Bylaws (2003 and 2006 versions), and the appendixes therein. CWRU conceded in the trial court that the Bylaws and Faculty Handbook are contractual in nature. *See* trial court's July 8, 2020 opinion at p. 6.

{¶ 33} Regarding the second element, the parties dispute whether CWRU had a contractual obligation to provide a start-up package or research funding to appellant upon his appointment to the tenure track. Assuming, without deciding, that CWRU breached its contractual obligations by failing to provide support or

funding to appellant, the record reflects that appellant's breach of contract claim fails under the damages element.

{¶ 34} In support of its motion for summary judgment, CWRU argued that even if it breached its contractual obligations by failing to provide start-up or ongoing funding or support to appellant, appellant cannot establish that he would have been awarded tenure but for CWRU's purported breach. CWRU emphasized that the damages element of appellant's breach of contract claim was based on speculative assumptions and unsupportable supposition:

> [appellant] asks [the trial court] to supplant [the considered decisions of CWRU] and make a series of speculative assumptions that, had [appellant] received a startup package and financial support for research when he was appointed to the tenure track, (1) that support would have successfully resulted in the award of significant research grants, and (2) that the research supported by those grants would have allowed him to attain the type of national reputation required of successful, tenure candidates at CWRU. Simply put, it is an argument based not only upon a flawed premise, but also on multiple layers of conjecture.

CWRU's motion for summary judgment at 1-2.

{¶ 35} In granting CWRU's motion for summary judgment, the trial court concluded that "the existence of damages is entirely speculative." The trial court explained that even if CWRU provided a start-up package and ongoing support to appellant, it is entirely speculative and unclear what would have resulted as far as appellant's research productivity, and the impact, if any, the start-up package and support would have had on the other two criteria for awarding tenure (teaching effectiveness and accomplishments in professional service). The trial court further

concluded that "[t]he only thing that can be said is that [appellant] may have presented an application that would be potentially more likely to demonstrate research excellence in addition to the teaching and service criteria." After reviewing the record, we agree with the trial court's analysis on the issue of damages.

{¶ 36} The trial court applied the "but-for" standard set forth in *Saha*, 10th Dist. Franklin No. 10AP-1139, 2011-Ohio-3824, and *Logsdon v. Ohio N. Univ.*, 68 Ohio App.3d 190, 587 N.E.2d 942 (3d Dist.1990). In order to prove a breach of contract in the context of a tenure decision, appellant is required to prove both that CWRU violated one or more terms of the Faculty Handbook and Bylaws, and that appellant was substantially prejudiced as a result. *Saha* at ¶ 26, citing *Gogate*, 42 Ohio App.3d at 222, 537 N.E.2d 690.

{¶ 37} In order to demonstrate substantial prejudice, appellant must prove causation. *Saha* at ¶ 27. In other words, appellant must demonstrate that but for CWRU's breach, appellant would have been awarded tenure. *Id.*, citing *Logsdon* at 195.

{¶ 38} Appellant's brief in opposition to CWRU's motion for summary judgment and his supporting evidence failed to demonstrate the existence of a genuine issue of material fact regarding whether appellant suffered damages as a result of CWRU's purported breach. Dr. Pamela Davis, the Dean of CWRU's School of Medicine, averred in her January 6, 2020 affidavit, that when appellant's first application for tenure was denied in 2011, DCAPT found that his application "fell

short of several benchmarks normally present in the [curriculum vitae] of other candidates for promotion and tenure."

{¶ 39} Dr. Joseph LaManna was the acting chair of the Department of Anatomy in CWRU's School of Medicine from 1993 to 2008. Dr. LaManna's comments in appellant's 2008 Faculty Activity Summary indicate that appellant's "teaching is excellent but research poor." Dr. LaManna asserted, "[a]lthough [appellant] is currently on the tenure track, he has not been able to generate any *time* or resources for bench research." (Emphasis added.) Dr. LaManna testified at his deposition that start-up funding does not guarantee anything: "[t]he start-up funds provide the opportunity to generate data and, hopefully, convince a study section to give you significant funding. In the medical school, small funding is not even enough. You have to generate NIH[2] funding." Appellant's six-year tenure review, completed in May 2009, concluded that "the lack of departmental support (including the absence of any monetary start-up package and with virtually no access to research space) *as well as heavy teaching demands* have erected serious negative barriers effectively short-circuiting his research career." (Emphasis added.)

{¶ 40} In support of his brief in opposition to CWRU's summary judgment motion, appellant submitted an August 16, 2012 letter from Dr. Scott Simpson, chair of the DCAPT. In the letter, Dr. Simpson referenced appellant's "extensive" teaching

---

2 National Institutes of Health.

responsibilities as a factor that contributed to appellant's inability to build the necessary research foundation. Dr. Simpson testified during his deposition that there was also "an absence of allocation of resources," and that the absence "*contributed* to [appellant's] lack of progress in the research track." (Emphasis added.)

{¶ 41} In its June 2011 decision on appellant's application for promotion and tenure, DCAPT recognized that appellant's "numerous teaching responsibilities have made a continuation of [appellant's] once promising research career difficult to achieve." In the decision, DCAPT opined that "institutional neglect of [appellant] has created roadblocks to his professional success." DCAPT ultimately concluded that "the record of productivity of [appellant] *falls short of several benchmarks* normally present in the CV of other candidates for promotion to Associate Professor with Tenure." (Emphasis added.)

{¶ 42} Appellant also submitted the deposition testimony of Dr. Daron Croft, a faculty member that was placed on the tenure track in 2003. Dr. Croft testified at his deposition that the start-up money he received "has certainly helped facilitate the research that I did, but if I decided to come to [CWRU] without a start-up package, I would still have figured out a way to do my research."

{¶ 43} The foregoing evidence fails to demonstrate that appellant's research record would have been worthy of an award of tenure had CWRU provided start-up funding or support to appellant, much less that but for CWRU's purported breach, appellant would have been awarded tenure.

{¶ 44} Appellant directs this court to *Pagano v. Case W. Res. Univ.*, 8th Dist. Cuyahoga No. 108936, 2021-Ohio-59. In *Pagano*, a panel of this court reversed a decision to grant summary judgment in favor of CWRU on a claim for breach of contract arising from the denial of Dr. Pagano's application for promotion and tenure. *Id.* at ¶ 5. The court recognized that "[c]ourts usually do not interfere in tenure decisions" and that "courts generally give deference to a university's tenure decisions regarding applicants' qualifications." *Id.* at ¶ 5, 39. However, the underlying nature of Dr. Pagano's claim was "that CWRU improperly considered noncontractual and inapplicable criteria in its [tenure] review." *Id.* at ¶ 42. The court found that a reversal was warranted because "Dr. Pagano has alleged specific contractual violations that occurred *during CWRU's tenure review process* and provided evidence that the procedural violations prejudiced her." (Emphasis added.) *Id.* at ¶ 5. The case was limited to "the precise procedural issues" that Dr. Pagano had raised. *See id.* at ¶ 45.

{¶ 45} After reviewing the record, we find that *Pagano* involved distinguishable circumstances. *Pagano* involved irregularities in the tenure review process. In this case, appellant is not alleging any procedural irregularities pertaining to the tenure review process, and he concedes that his application for promotion and tenure was denied in good faith. We decline to apply the *Pagano* rationale and instead follow the Ohio appellate decisions that have consistently applied a discretionary and deferential standard in tenure cases.

{¶ 46} Because it is undisputed that (1) proper procedure was followed regarding the tenure review process, and (2) CWRU did not act fraudulently or in bad faith in denying appellant's application for promotion and tenure, we decline to intrude in CWRU's tenure decision by essentially converting a tenure issue into a contractual issue.

{¶ 47} As noted above, in order to prevail on his breach of contract claim, appellant is required to demonstrate that but for CWRU's purported breach of its contractual obligations, appellant would have been awarded tenure. *Saha*, 10th Dist. Franklin No. 10AP-1139, 2011-Ohio-3824, at ¶ 27, citing *Logsdon*, 68 Ohio App.3d at 195, 587 N.E.2d 942. The issue before this court is whether appellant presented evidence demonstrating the existence of a genuine issue of material fact regarding whether he would have been awarded tenure but for CWRU's alleged breach. Appellant has failed to satisfy his burden.

{¶ 48} The damages resulting from CWRU's purported breach of its contractual obligations are purely speculative. Had CWRU provided start-up research funding and support to appellant upon his appointment to the tenure track, it is entirely speculative that the application for promotion and tenure appellant submitted at the end of his pretenure review period would have been granted. It is equally speculative, and entirely unclear whether, even with start-up funding or support (1) appellant's extensive teaching responsibilities would have restricted the amount of time appellant could dedicate to research, (2) appellant would have been able to generate sufficient data to apply for and obtain outside research grants or

funding, and (3) appellant's record with respect to the other two criteria for tenure — teaching effectiveness and professional service — would also have been worthy of promotion and tenure.

{¶ 49} Based on the foregoing analysis, we find that appellant has failed to demonstrate that but for CWRU's purported breach of its contractual obligations, his application for promotion and tenure would have been granted. Accordingly, appellant's breach of contract claim fails and CWRU is entitled to judgment as a matter of law.

{¶ 50} For all of the foregoing reasons, the trial court properly granted summary judgment in favor of CWRU. Appellant's sole assignment of error is overruled.

{¶ 51} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

SEAN C. GALLAGHER, PRESIDING JUDGE

MICHELLE J. SHEEHAN, P.J., and
LISA B. FORBES, J., CONCUR