[Cite as *Chen v. Univ. of Dayton*, 2023-Ohio-4002.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| LIJIAN CHEN PH.D. | : | |
| | : | |
| Appellant | : | C.A. No. 29781 |
| | : | |
| v. | : | Trial Court Case No. 2021 CV 00238 |
| | : | |
| UNIVERSITY OF DAYTON | : | (Civil Appeal from Common Pleas |
| | : | Court) |
| Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 3, 2023

. . . . . . . . . . .

MARC D. MEZIBOV & DENNIS A. GLEASON, Attorneys for Appellant

EVAN T. PRIESTLE & BRIAN G. DERSHAW, Attorneys for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Plaintiff-Appellant Lijian Chen, Ph.D., appeals from the trial court's grant of summary judgment in favor of the University of Dayton ("UD") on his breach of contract

claim.[1]   He argues that the trial court erred in denying his Crim.R. 56(F) motion, in concluding that he had been required to exhaust UD's internal administrative remedies, and in granting judgment as a matter of law to the university on his breach of contract claim.   For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} Chen, a naturalized citizen from China, has resided in the United States since 2001.   In 2006, Chen obtained his doctoral degree in industrial engineering from the Ohio State University.   From August 2006 to July 2013, he taught engineering at the University of Louisville.

{¶ 3} In August 2014, UD hired Chen as an assistant professor of operations management, a tenure-track position in the Department of Management Information Systems, Operations Management, and Decision Sciences ("MOD") in the School of Business Administration ("SBA").   Chen was eligible to apply for tenure in the fall of 2019.

### A. Pre-Tenure Annual Reviews

{¶ 4} The SBA Promotion, Tenure, and Faculty Review ("PT&FR") Policies and Procedures govern the process for promotion and tenure in the SBA.   Beginning the second year, untenured faculty members receive annual reviews "intended to provide performance feedback to such faculty with respect to his/her progress toward achieving tenure and promotion."   Chen Dep., Ex. B., Section 2.1.   The annual review involves a multi-step process:

---

[1] Chen also brought a claim for discrimination based on his race and national origin, but he does not challenge on appeal the trial court's grant of summary judgment on that claim.

| Approx. Date | Activity |
|---|---|
| End of October | Dean's office notifies untenured faculty member to prepare documentation for annual review |
| 1 week after spring classes begin | Untenured faculty member submits material to department chair |
| 5 weeks after spring classes begin | Department PT&FR Committee conducts review and submits evaluation to the SBA dean via the department chair. |
| | Department chair prepares and submits a separate evaluation to the dean |
| 10 weeks after spring classes begin | SBA PT&FR Committee provides evaluation to the dean |
| 14 weeks after spring classes begin | The SBA dean communicates his/her evaluation to the candidate, department chair, department PT&FR Committee, and SBA PT&FR Committee |

*See* Chen Dep., Ex. B, Section 2.1.

{¶ 5} The criteria used for evaluation are addressed in Section 4 of the PT&FR policy manual. Since 2017, faculty members are rated in the areas of teaching, scholarship, and service as either excellent, very good, good, or unacceptable. Chen Dep., Ex. B, Section 4. Because Chen's petition for promotion and tenure ultimately was denied based on his teaching evaluation, we will focus on the annual reviews of his teaching, as do the parties in their appellate briefs.

{¶ 6} During the Spring 2015 term (Chen's first year), Chen requested an informal performance evaluation. The following spring, he began receiving pre-tenure annual reviews. Chen's reviews identified both strengths and areas of improvement in his

teaching. By his Spring 2016 evaluation, Chen had taught six sections of one course, OPS 301. The MOD PT&FR Committee noted that the student evaluations of Chen's teaching (SET scores) supported the conclusions that Chen took teaching seriously and was interested in his students. The committee noted, however, that his average grade for the course was too high. Chen Dep., Ex. F. The MOD chair had several positive comments but noted that Chen "understands the need to recalibrate his expectations of students and has begun to take steps to do so." Chen Dep., Ex. G. The SBA PT&FR Committee additionally noted that a peer review conducted by Dr. John Kanet of Chen's teaching materials and classroom teaching was "very positive." Chen Dep., Ex. H.

{¶ 7} By the 2017 annual review, Chen had taught two additional classes: OPS 350 and MBA 791. The MOD PT&FR review again found Chen to be "an enthusiastic and diligent teacher who is sincerely interested in student development." It noted improvement in the grade distribution for OPS 301 but said that an "additional but less dramatic decrease" was still needed to meet SBA norms. As for Chen's new classes, the committee recognized "difficulties encountered in offering courses for the first time" and encouraged Chen to "focus on the course topics at hand in OPS 350 and the relevancy of those topics to operations managers." Although noting that improvements were needed, the committee "remain[ed] confident" that Chen was still on track to meet the standard for tenure. Chen Dep., Ex. J.

{¶ 8} The MOD chair had similar comments and suggested that Chen "seek the counsel of his more experienced colleagues to understand better our expectations of undergraduate and graduate business students as well as our curricula." Chen Dep.,

Ex. K. Likewise, the interim dean's review summarized Chen's teaching, saying: "[Y]our teaching record on our faculty indicates that you have worked to become an effective teacher in the OPS 301 course. However, you need to improve your approaches to both the OPS 350 course for majors and the MBA 791 course for graduate students." Chen Dep., Ex. M. Chen indicated during his deposition that he sought advice from three MOD faculty members. Chen Dep. at 88-91.

{¶ 9} In early 2018, Dr. David Salisbury conducted a peer review of Chen's OPS 301 class. Chen Dep. at 170. As part of Chen's 2018 annual review (Chen's third), the MOD PT&FR Committee again found that Chen needed to bring the average GPA in OPS 301 in line with SBA norms. Chen Dep., Ex. N. The Committee review continued:

> While the Committee believes that there are improvements needed in the evaluative rigor of his OPS 301 delivery, as well as continued improvements in the delivery of his other two teaching assignments, OPS 350 and MBA 791, it also believes that the effort and enthusiasm evidenced by Professor Chen affords his performance in teaching the potential to be rated good at the time of his tenure decision. To this end, the department faculty will continue to offer assistance and perspective to Professor Chen as he makes the necessary changes.

Chen Dep., Ex. N.

{¶ 10} The MOD chair, Dr. Jayesh Prasad, and the SBA PT&FR Committee had similar comments, both positive and negative, about Chen's teaching. Chen Dep., Ex. O & P. Dr. Prasad noted that an initial peer review of OPS 301 was positive and that

Chen's SET scores for that class were "typically at or above department averages." He stated that Chen "could do better still" regarding his teaching of OPS 350 and MBA 791. The committee also stated that there was "work to be done." However, both found that Chen was making positive progress toward tenure and promotion. Chen Dep, Ex. P. The dean concurred with the 2018 assessment. Chen Dep., Ex. Q. Chen considered his 2017-2018 Term reviews to be "very positive." Chen Dep. 94-96.

**B. Additional Peer Evaluations and SET Scores**

{¶ 11} Chen taught OPS 350 in the fall of 2018. His SET score in each of the eight categories was lower than the department faculty average. Chen Dep, Ex. S.

{¶ 12} In January 2019, Dr. Charles Wells conducted an informal peer review of Chen's teaching of OPS 350 class. Chen Dep., Ex. T. Wells wrote that Chen was enthusiastic and prepared for class, and that he used interesting examples that seemed to increase in complexity. He further stated, however, that he believed Chen "overestimate[d] the students' abilities," noting that business students possess a different store of knowledge than engineering students. Wells also indicated that a particular example required a "deeper dive" than provided.

{¶ 13} In February 2019, Dr. John Ruggiero, an economics professor, also observed Chen's teaching of OPS 350 and provided a written evaluation. Ruggiero's stated that, "overall, I was impressed with Dr. Chen's teaching abilities and the engagement with the class. I wish other faculty were as enthusiastic as Lance." Chen Dep., Ex. FF.

{¶ 14} Dr. Michael Gorman provided an additional evaluation of Chen's teaching

of OPS 350. Gorman wrote that, after observing two classes, he had "reservations about [Chen's] teaching effectiveness." He summarized his assessment, stating:

In short, Lance has a hard time communicating with and motivating his students. Throughout two lectures, I found coverage to be somewhat inconsistent and generally unclear, and occasionally inaccurate. I saw both an intense over-coverage of some mundane and unimportant assumptions and model details, as well as glossing over imperative and fundamental concepts to be gleaned from the class. As a result, I am not sure students take away from the course the key learnings for which the course is intended.

Chen Dep., Ex. U. In appendices, Gorman provided detailed descriptions of the two classes he attended.

{¶ 15} In addition to OPS 350, Chen continued to teach MBA 791. In November 2018, Dr. Jim Dunne authored a review of Chen's teaching of MBA 791 based on his observations of Chen's teaching the online course in both May-June 2018 and July-August 2018. Chen Dep., Ex. R. Chen served as one of several section instructors for this course, which was developed by Dunne. Dunne identified two "significant concerns" regarding Chen's teaching, including that Chen did not deliver the course as designed and that his grading appeared "sloppy and unacceptable." Dunne recommended that Chen not be assigned as section leader for MBA 791 again.

{¶ 16} Dr. Chen again served as section faculty (along with two other individuals) for the online MBA 791 in the spring of 2019. As before, Dunne, the lead faculty member,

reviewed his performance. Dunne had several positive observations, including that Chen seemed enthusiastic and tried hard to be successful, had a good rapport with students, was good with technology, and volunteered to solve and post end-of-chapter exercises for two chapters to assist students. He noted five negative observations, including: (1) "He still doesn't know and understand the course material well"; (2) his explanations and demonstrations are often confusing; (3) he ignores or gives little attention to some important aspects of business analytics; (4) his grading "appears to be quick and incomplete"; and (5) his work had "a good number of errors." Dunne recommended that Chen not be assigned to teach MBA 791 in the future. Chen Dep., Ex. V. Chen's SET scores for the online MBA 791 were substantially below the faculty average. Chen Dep., Ex. Z.

{¶ 17} Chen taught an on-campus class of MBA 791 in the summer of 2019. His SET scores for that class were above the faculty average. Dunne provided a review of Chen's on-campus teaching of MBA 791 in September 2019. His review was less negative but included some critiques. Chen Dep., Ex. X.

{¶ 18} Chen sent Prasad (the MOD Chair) and the MOD PT&FR Committee a written response to Gorman's comments regarding OPS 350 and Dunne's comments regarding the online MBA 791 class. Chen Dep., Ex. W. In his response to Dunne's letter, Chen highlighted the positive student responses he received to his on-campus class for that course.

**C. Petition for Promotion and Tenure**

{¶ 19} To receive a positive recommendation for promotion and/or tenure, the

applicant must be rated good or better in teaching, scholarship, and service. Similar to the annual review process, a candidate for promotion and tenure is evaluated by and receives a recommendation from the department PT&FR Committee, the department chairperson, and the SBA PT&FR Committee, with feedback to the candidate. Chen Dep., Ex. B at 7-9. The candidate may respond in writing to the feedback. The dean prepares a preliminary recommendation, to which the candidate can respond. *Id.* at 8. The dean then submits a final recommendation to the provost, who makes a recommendation to UD's president. UD's president makes the final decision regarding an award of tenure. Chen Dep. at 143; Ruggiero Dep., Ex. 1, p. 43.

{¶ 20} The SBA PT&FR Policies and Procedures incorporates by reference the formal appeal process set forth in Section IV-Faculty Policies of the Faculty Handbook. Chen Dep., Ex. B., Section 2.6; Ruggiero Dep., Ex. 1, p. 43. If the tenure candidate chooses to appeal the president's decision, the candidate may mediate the issue. Ruggiero Dep., Ex. 1, p. 43. If mediation is unsuccessful, the candidate may use the appeal process. *Id.* The Board of Trustees serves as "the court of last resort" for matters related to tenure and promotion. *Id.*

{¶ 21} In September 2019, Chen submitted an application for promotion to associate professor and for an award of tenure. Chen Dep., Ex. Y. The MOD chair rated Chen's teaching as unacceptable. Although recognizing Chen's positive performance teaching OPS 301 and his well-meaning efforts, Prasad had "grave concerns" about his teaching of OPS 350 and MBA 791. Chen Dep., Ex. AA. Prasad noted Chen's "markedly lower" SET scores for MBA 791. Prasad concluded that he

could not recommend Chen for tenure and promotion. The MOD PT&FR Committee had similar concerns about Chen's teaching (and also scholarship), and concluded that Chen did not meet the performance criteria for promotion and tenure. Chen Dep., Ex. BB.

{¶ 22} The SBA PT&FR Committee did not come to a consensus about Chen's teaching of OPS 350 and MBA 791. The Committee voted 5-2 to rate his teaching as good. Chen Dep., Ex. CC. It recommended Chen for promotion and the granting of tenure.

{¶ 23} The SBA dean's preliminary recommendation rated Chen as unacceptable for teaching. His recommendation noted that the initial concerns about OPS 301 had largely been addressed, but he expressed concerns about OPS 350 and MBA 791. After detailing the issues and SET scores for several semesters, the dean stated: "Over repeated semesters, the issues raised in both OPS 350 and MBA 791 online can and should be addressed, but have not. My concern is that there does not appear to be improvement in course quality across time, as one would hope and expect." Chen Dep., Ex. EE. Chen wrote a response to the dean, asking him to "look closely" at his performance and evaluations where he was the primary course instructor. Chen Dep., Ex. FF. He argued that the quality of his teaching had improved over time and compared favorably to his colleagues. The dean's final recommendation addressed Chen's SET scores extensively and again rated Chen as unacceptable. Chen Dep., Ex. GG. The provost agreed with the dean's assessment of Chen's teaching and decided not to recommend Chen for promotion and tenure. Chen Dep., Ex. HH. The provost informed UD's president of his decision. *See id.*

{¶ 24} Chen submitted a written response to UD's president. Chen Dep., Ex. II. He raised, among other things, his concerns that the MOD department committee failed to objectively assess his teaching performance, that there was an agenda to "work against his promotion and tenure," that there were inconsistencies between his 2018 and 2019 evaluations, and that he was treated unfairly in comparison to Drs. Jacobs and Salisbury, two tenured MOD professors.

{¶ 25} The UD president denied Chen's application for promotion and tenure. Chen Dep., Ex. JJ. Although Chen initially indicated that he had reviewed the appeal procedures and would appeal the president's denial of his petition, he did not pursue an internal appeal. Chen Dep. at 181 & Ex. LL. He explained that he spoke to the assistant provost first, who suggested mediation. He asked about conducting part of the process remotely, but he did not think he received an answer. Chen Dep. at 182. Soon after, UD shut down due to the COVID-19 pandemic, and he did not pursue face-to-face conversations because he did not "want to put my colleagues' life in danger because of the pandemic." Id. at 181.

{¶ 26} On March 4, 2020, Chen filed a complaint with the U.S. Equal Employment Opportunity Commission. See id. at 184, Ex. MM.

**D. Litigation History**

{¶ 27} On January 21, 2021, Chen sued UD, raising two causes of action: (1) breach of contract and (2) discrimination on account of race and/or national origin, in violation of R.C. Chapter 4112. As to the breach of contract claim, he alleged that the "actions of UD in denying [his] application for promotion and tenure were committed

arbitrarily, capriciously, and in bad faith and as such constituted a breach of the terms and conditions of the employment contract between it and Professor Chen." Compl. ¶ 22. UD filed an answer denying the claims and raising several affirmative defenses. Its eighth defense alleged that Chen "did not exhaust the full procedure, including but not limited to the University of Dayton's internal appeal procedure, relating to his application for promotion and/or tenure."

{¶ 28} On March 23, 2021, the parties filed a joint discovery plan. According to that document, the parties would complete initial disclosures required by Civ.R. 26(B)(3)(a), and all discovery would be completed by November 30, 2021. The agreed deadline for filing potentially dispositive motions was January 28, 2022. On April 8, 2021, the trial court issued a pretrial order that incorporated the parties' agreed timeline.

{¶ 29} Six months later, in October 2021, the parties filed a joint motion for the entry of a stipulated protective order and approved confidentiality agreement. The trial court granted the motion.

{¶ 30} After another pretrial conference in January 2022, the trial court issued a revised scheduling order. Under the new timetable, the deadline for summary judgment motions was July 25, 2022, and discovery was to be completed by October 3, 2022. A jury trial was scheduled for October 31, 2022. In July 2022, at the parties' joint request, the summary judgment motion deadline was amended to November 18, 2022, and the trial date was rescheduled for March or April 2023. The trial date was later clarified to be March 20, 2023.

{¶ 31} On October 27, 2022, approximately three weeks after the discovery

completion deadline, Chen filed a motion to compel the production of documents and to reopen and extend the discovery deadline. Chen indicated that he was seeking the disclosure of SET scores and student comments for Drs. Salisbury and Jacobs. Pre-2014 records were not in electronic form and, therefore, UD had maintained that they were difficult to locate and produce.

{¶ 32} UD opposed the motion on multiple grounds. It argued: (1) Chen's motion was untimely; (2) the documents he sought were "not legally relevant to his claims"; (3) the documents are "upwards of twenty years old"; (4) production of the documents would impose a significant and disproportionate burden on the university; and (5) Chen did not timely and diligently seek the documents. UD supported its memorandum with affidavits from its attorney and the associate provost for faculty and administrative affairs, as well as several exhibits.

{¶ 33} On November 18, 2022, prior to a resolution of Chen's motion to compel, UD filed a motion for summary judgment on both the breach of contract and discrimination claims. It asserted that Chen's breach of contract claim failed because he did not exhaust his administrative remedies and that both his claims failed as a matter of law.

{¶ 34} Chen responded with a Civ.R. 56(F) motion, claiming that he required the same additional discovery prior to responding. The court held UD's summary judgment motion in abeyance while the parties fully briefed the Civ.R. 56(F) issue.

{¶ 35} On December 20, 2022, the trial court overruled Chen's motion to compel. It first found that the motion was untimely, reasoning that the motion was filed 24 days after the deadline for completing discovery. The court further noted that Chen had had

nearly two years to complete discovery, yet there had been "multiple stretches of months that he made no attempts to further the discovery process." Moreover, he did not request the specific discovery at issue until the end of July 2022 and waited until a week before the discovery deadline to request additional documents from UD. The trial court further emphasized that the October 3, 2022 discovery deadline was set on February 9, 2022, and Chen never sought to extend the deadline. As to UD's proportionality and undue burden argument, the trial court recognized that UD had already produced 800 pages of documents in response to the specific request at issue and had produced more than 4,500 pages throughout discovery. Given that the requested documents were in paper form, UD had estimated that compliance would considerably exceed $6,000. The court concluded that "this burden and expense outweigh any benefit that these requested documents might provide to Professor Chen."

{¶ 36} In early January 2023, the court also overruled Chen's Civ.R. 56(F) motion, reiterating its reasoning from the denial of the motion to compel. The court also noted that Chen admitted that the requested discovery would simply bolster evidence he already had.

{¶ 37} Chen subsequently filed his opposition to UD's summary judgment motion. He asserted that application of the doctrine of exhaustion of administrative remedies to private parties is limited and should not apply to his circumstances. He also asserted that employing UD's administrative remedies would have been a vain act because he could not meaningfully challenge the decision.

{¶ 38} As to the merits of his claims, Chen argued that UD failed to adopt clear

criteria for promotion and tenure and, in doing so, substantially prejudiced him. He emphasized that his final tenure reviews "inexplicably contradict[ed]" his prior annual evaluations which, he states, "both consistently praised Dr. Chen's upward trajectory of improvement, and consistently forecasted a positive tenure decision." He also argued that there was compelling evidence of bad faith on the part of MOD department members in the tenure process. Finally, Chen contended that there was evidence to support his claims that UD had denied him tenure because of his Chinese ethnicity and national origin.

{¶ 39} On April 19, 2023, the trial court granted UD's motion for summary judgment. After concluding that it could consider a disputed document filed under seal by Chen, the trial court determined that UD was entitled to summary judgment on three grounds. First, it concluded that Chen's breach of contract claim failed because he did not exhaust his available internal administrative remedies. The court rejected Chen's arguments that the exhaustion doctrine should not apply and that compliance would have been a vain act.

{¶ 40} As for the breach of contract claim itself, the court concluded that it also failed as a matter of law. It found that Chen's argument in opposition to summary judgment – that UD had failed to adopt clear criteria for tenure decisions – was improperly raised for the first time in response to UD's summary judgment motion. It further noted that Chen did not argue that he would have been granted tenure but for UD's breach.

{¶ 41} Finally, the trial court concluded that UD was entitled to summary judgment on Chen's discrimination claim. It reasoned that Chen failed to show that he was

similarly situated to Drs. Salisbury and Jacobs, that UD met its burden to establish a legitimate, nondiscriminatory reason for the denial of Chen's tenure, and that Chen did not produce evidence that UD's reason for denying him tenure was a pretext for discrimination.

{¶ 42} Chen appeals from the trial court's judgment, raising three assignments of error.   We will address them in an order that facilitates our analysis.

## II. Chen's Civ.R. 56(F) Motion

{¶ 43} In his third assignment of error, Chen claims that the trial court abused its discretion in denying his Crim.R. 56(F) motion.   He argues that he needed the SET scores of his colleagues to refute UD's assertion that his teaching scores were below standard.

{¶ 44} Civ.R. 56(F) "affords a party a mechanism whereby it can seek deferral of action on a motion for summary judgment so that it may obtain affidavits opposing the motion or conduct discovery relevant to it."   *Gates Mills Inv. Co. v. Pepper Pike*, 59 Ohio App.2d 155, 168-69, 392 N.E.2d 1316 (8th Dist.1978), citing Civ.R. 56(F).   Under the rule, the party opposing summary judgment must submit an affidavit explaining why it cannot "present by affidavit facts essential to justify the party's opposition" to the summary judgment motion.   If that party submits an affidavit with sufficient reasons, the trial court may deny the summary judgment motion or may "order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."   Civ.R. 56(F).

{¶ 45} "Pursuant to Civ.R. 7(A), the grounds for a Civ.R. 56(F) motion for a

continuance must be stated with particularity." *Doriott v. MVHE, Inc.*, 2d Dist. Montgomery No. 20040, 2004-Ohio-867, ¶ 40. Mere allegations requesting a continuance for the purpose of discovery are not sufficient reasons. *Id.*; *Gates Mills Inv. Co.* at 169. Rather, "[t]here must be a factual basis stated and reasons given why it cannot present facts essential to its opposition to the motion." *Doriott* at ¶ 40. While the non-moving party is not required to specify what facts it hopes to discover, the court must be convinced that there is a likelihood of discovering some such facts. *Id.* at ¶ 41. "[A] claim that the party has not completed discovery is more likely to be rejected by the court where the party has not shown some diligence in attempting discovery." *Id.*

{¶ 46} We review the trial court's determination of a Civ.R. 56(F) motion for an abuse of discretion. *Johnson v. Clark Cty. Aud.*, 2020-Ohio-3201, 155 N.E.3d 199, ¶ 21 (2d Dist.). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 47} Chen's Civ.R. 56(F) motion and the accompanying affidavit by his attorney asserted that Chen could not respond to UD's summary judgment motion without conducting discovery related to SET scores and student comments for Drs. Salisbury and Jacobs, two professors in his department who had received tenure. Citing deposition testimony from Dr. Ruggiero (a member of the Fall 2019 SBA PT&FR Committee), counsel averred that their SET scores were the same or worse than Chen's, yet were judged to meet department standards. Counsel stated the discovery of Salisbury's and Jacobs's SET scores and student comments were "necessary to demonstrate the truth or

falsity of Defendant's claim that Dr. Chen's teaching performance was below department standards." Counsel further stated that the necessary records had been located and therefore any delay would be minimal.

{¶ 48} UD opposed the Civ.R. 56(F) motion. It first emphasized that Chen had had nearly two years to complete discovery and that there were many months where no discovery had occurred. It stated that Chen did not request the records at issue until July 27, 2022, and although UD timely responded to the request, Chen did not raise an issue with UD's response until a week before the discovery deadline. Second, UD argued that the records would not aid him in opposing UD's summary judgment motion. It explained that neither Dr. Salisbury nor Jacobs was similarly situated to Chen for purposes of Chen's discrimination claim, because the decision makers for their tenure applications were different than Chen's. As for the breach of contract claim, UD argued that Chen could not properly use SETs or student comments from other professors to establish that the "usage or custom" of UD differed for him. Third, UD argued that complying with Chen's request would be an undue burden.

{¶ 49} In support of its response, UD incorporated the evidence it submitted in its opposition to Chen's motion to compel. In his affidavit, UD's attorney detailed the course of the parties' discovery efforts, and he attached UD's discovery responses and copies of communications between the parties' attorneys regarding discovery. The other affidavit from the associate provost identified decision-makers involved in the tenure decisions for Drs. Jacobs and Salisbury; those individuals were different than the SBA dean, provost, and UD president involved in Chen's tenure and promotion decision.

{¶ 50} In denying Chen's motion, the trial court agreed with UD and reiterated the reasons from its order denying Chen's similar motion to compel discovery. The court found that Chen had not acted with diligence in seeking discovery: Chen had had nearly two years to conduct discovery, but there had been long periods of inaction by Chen and he had failed to seek the discovery at issue until one week before the discovery deadline. The court further commented that Chen admitted in his motion that he was simply seeking discovery to bolster evidence that he already had. Third, the court noted that UD had produced more than 4,500 pages of documentation in this case and that it would be an undue burden for UD to respond to Chen's belated discovery request.

{¶ 51} On the record before us, we find no abuse of discretion in the trial court's ruling. Upon review of the materials submitted by the parties, the trial court reasonably concluded that Chen had not diligently pursued discovery, particularly in requesting the information sought in his Civ.R. 56(F) motion. Moreover, Chen stated in his motion that Dr. Ruggiero had testified in his deposition that Chen's teaching scores were no worse than and may have been better than those of Drs. Salisbury and Jacobs. The trial court thus also reasonably concluded that Chen had evidence with which to respond to UD's motion for summary judgment. Finally, while Chen's counsel indicated that the parties had ascertained the location of the specific documents at issue, UD elaborated about the time and expense needed to search for the specific records. The trial court did not abuse its discretion in concluding that UD's burden in responding to Chen's belated discovery request outweighed any benefit that the response would provide to Chen.

{¶ 52} Chen's third assignment of error is overruled.

### III. Review of Summary Judgment Decision

{¶ 53} Chen's first and second assignments of error challenge the trial court's grant of summary judgment to UD on Chen's breach of contract claim.

### A. Standard of Review

{¶ 54} Appellate review of a trial court's ruling on a summary judgment motion is de novo. *Schroeder v. Henness*, 2d Dist. Miami No. 2012-CA-18, 2013-Ohio-2767, ¶ 42. De novo review " 'means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial.' " *Riverside v. State*, 2016-Ohio-2881, 64 N.E.3d 504, ¶ 21 (2d Dist.), quoting *Brewer v. Cleveland City Schools Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997). On such review, we do not grant deference to the trial court's determinations. *Powell v. Rion*, 2012-Ohio-2665, 972 N.E.2d 159, ¶ 6 (2d Dist.).

{¶ 55} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Id.*

at 292-293.

{¶ 56} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleadings. *Id.* at 293. Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

### B. Exhaustion of Administrative Remedies

{¶ 57} In his first assignment of error, Chen claims that the trial court erred in finding that no genuine issue of material fact existed as to whether he violated the administrative exhaustion rule. He argues that UD's grievance procedure was insufficient to merit application of the rule and that any internal appeal would have been a "vain act."

{¶ 58} Under the doctrine of exhaustion of administrative remedies, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Jones v. Chagrin Falls*, 77 Ohio St.3d 456, 462, 674 N.E.2d 1388 (1997), quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51, 58 S.Ct. 459, 82 L.Ed. 638 (1938); *Smith v. White*, 2014-Ohio-130, 7 N.E.3d 552, ¶ 77 (2d Dist.). The exhaustion doctrine is a court-made rule of judicial economy. *Nemazee v. Mt. Sinai Med. Ctr.*, 56 Ohio St.3d 109, 564 N.E.2d 477 (1990). The purposes behind the doctrine include allowing the administrative agency to apply its specific expertise and to develop a factual record, preventing "premature interference with

agency processes," and providing the agency an opportunity to correct its own mistakes. *Id*. at 111-112, quoting *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

**{¶ 59}** "The failure to exhaust administrative remedies is not a jurisdictional defect but is rather an affirmative defense, if timely asserted and maintained." *Dworning v. Euclid*, 119 Ohio St.3d 83, 2008-Ohio-3318, 892 N.E.2d 420, ¶ 11, citing *Jones* at syllabus. UD raised exhaustion of administrative remedies as an affirmative defense in its answer and again in its summary judgment motion.

**{¶ 60}** There are, however, exceptions to the exhaustion requirement. First, exhaustion is not required "when there is a judicial remedy that is intended to be separate from the administrative remedy." *Id.* at ¶ 10. For example, a public employee claiming discrimination under R.C. Chapter 4112 need not exhaust administrative remedies before pursuing a civil action under R.C. 4112.99. *Id.* Second, a party does not need to exhaust administrative remedies when employing the administrative procedures would be a "vain act." *Nemazee*, 56 Ohio St.3d at 114-115, 564 N.E.2d 477.

**{¶ 61}** In his appellate brief, Chen recognizes that the Ohio Supreme Court has extended the requirement to exhaust administrative remedies to physicians at private hospitals who, by way of an employment contract, have established administrative procedures to address questions regarding medical staff privileges. *Id.* He further acknowledges that this and other appellate districts have applied the exhaustion doctrine in the private university setting. *Klein v. Antioch Univ.*, 2d Dist. Greene No. 1983-CA-95, 1984 WL 3257 (Dec. 5, 1984); *Oruma v. Ohio N. Univ.*, 3d Dist. Hardin No. 6-95-19, 1996

WL 492250 (July 5, 1996). He argues, however, that the doctrine is overbroad and should not be applied to UD's procedure as it is not analogous to the one in *Nemazee*. He states that the internal remedy involved in *Nemazee* was compulsory and that the supreme court relied upon its similarity to arbitration to justify the exhaustion doctrine's application.

{¶ 62} In applying the exhaustion doctrine to private hospitals addressing medical staffing issues, the Ohio Supreme Court in *Nemazee* reviewed the relevant provisions in the parties' employment contract, which incorporated a Due Process Policy that covered academic and disciplinary actions. The policy provided that a resident "may request review" of the disciplinary action by a hearing committee, and it set forth the procedures for such a review. If the disciplinary action of the hearing committee resulted in dismissal from a residency program, the action also would be presented to an additional committee for review. The ultimate decisions were deemed "final and non-appealable."

{¶ 63} The supreme court held that plaintiff-resident was required to avail himself of the hospital's administrative procedures before seeking judicial relief. The Court noted that the procedures established by the hospital policy were akin to an arbitration agreement, which is favored by Ohio courts. *Nemazee* at 113, fn. 4. The supreme court further emphasized the deference that Ohio courts generally give to the judgment of hospital administrators in matters relating to staffing privileges. *Id.* at 113-114. The supreme court concluded that its ruling was consistent with the purposes of the exhaustion doctrine. *Id.* at 114.

{¶ 64} This appellate court has also applied the exhaustion requirement to private

settings.  *E.g., Carter v. Trotwood-Madison City Bd. of Edn.*, 181 Ohio App.3d 764, 2009-Ohio-1769, 910 N.E.2d 1088 (2d Dist.) (exhaustion requirement applied to collective bargaining agreement, but plaintiffs, as retired teachers, were not subject to the CBA). Most notably, we have applied the exhaustion requirement to a lawsuit filed by a "tenured administrator" at a private university following the termination of his employment.  *Klein,* 2d Dist. Greene No. 1983-CA-95, 1984 WL 3257.

{¶ 65} In that case, Klein demanded to return to the teaching faculty after his position as an administrator was terminated.   When the university did not immediately hire him in a teaching capacity, he failed to initiate the administrative appeal process "that was adequate and designed for just such a situation, which had it taken its course would have required him to meet and negotiate with the officials of the institution to resolve their differences in the informal academic setting."  *Id.* at *6.   We held that Klein's failure to do so precluded his claim, stating:

> Where a university adopted regulations providing for an administrative appeal process on issues unique to the institution, such regulations are an implied part of employment.   Failure of an employee to exhaust such remedies waives such rights as are asserted.   The rule requiring exhaustion of administrative remedies is a legal as well as equitable defense to judicial action based upon such a claim.

*Id.* at *7.

{¶ 66} The extension of the exhaustion of administrative remedies doctrine to tenure and promotion decisions at private universities is a natural one.   Much like

medical staffing decisions at private hospitals, courts generally defer to "academic decisions of colleges and universities unless there has been 'such a substantial departure from the accepted academic norms as to demonstrate that the committee or person responsible did not actually exercise professional judgment.' " *Galiatsatos v. Univ. of Akron*, 10th Dist. Franklin No. 00AP-1307, 2001 WL 1045513, \*5 (Sept. 13, 2001), quoting *Bleicher v. Univ. of Cincinnati College of Med.*, 78 Ohio App.3d 302, 308, 604 N.E.2d 783 (10th Dist.1992); *see also Fredieu v. Case W. Res. Univ.*, 2021-Ohio-1953, 176 N.E.3d 324, ¶ 25 (8th Dist.). The Tenth District has repeatedly cautioned against intruding into faculty employment and tenure decisions. *Saha v. Ohio State Univ.*, 10th Dist. Franklin No. 10AP-1139, 2011-Ohio-3824, ¶ 37; *Galiatsatos* at \* 5; *Gogate v. Ohio State Univ.*, 42 Ohio App.3d 220, 226, 537 N.E.2d 690 (10th Dist.1987). It noted that "[d]eterminations about such matters as teaching ability, research scholarship, and professional stature are subjective, and unless they can be shown to have been used as the mechanism to obscure discrimination, they must be left for evaluation by the professionals, particularly since they often involve inquiry into aspects of arcane scholarship beyond the competence of individual judges." *Gogate* at 226, quoting *Kunda v. Muhlenberg College*, 621 F.2d 532, 548 (3d Cir.1980).

{¶ 67} And, as with internal appeals in the hospital setting, internal administrative procedures for tenure decisions comport with the principles underlying the exhaustion doctrine. The internal review process affords an opportunity for the university to compile a more complete record, to employ its expertise, and to correct its own mistakes prior to judicial intervention. In addition, as noted in *Nemazee*, the law favors parties resolving

their disputes through alternative methods, such as arbitration, rather than litigation.

**{¶ 68}** Moreover, contrary to Chen's assertion, the policy at issue in *Nemazee* did not require exhaustion ("the resident *may* request review of the matter"), and nothing in *Nemazee* suggests that its holding was limited to employment agreements that did. Rather, "the rule requiring exhaustion of administrative remedies applies where an administrative remedy is provided; the parties need not be explicitly obligated to use it." *Frick v. Univ. Hosp. of Cleveland*, 133 Ohio App.3d 224, 229, 727 N.E.2d 600 (8th Dist.1999), citing *Pappas & Assocs. Agency, Inc. v. State Auto. Mut. Ins. Co.*, 9th Dist. Summit No. 18458, 1998 WL 15605, *3 (Jan. 7, 1998) (noting that decades of case law has compelled exhaustion of administrative remedies even when the statute providing the remedy stated that the aggrieved party "may" pursue that remedy).

**{¶ 69}** In short, we reiterate that the doctrine of exhaustion of administrative remedies applies to a private university's decisions regarding tenure and promotion. We reject Chen's assertion that application of the doctrine in this case would be overbroad and improper.

**{¶ 70}** It is undisputed that Chen did not appeal UD's tenure decision. Chen admitted in his deposition that he had read the faculty handbook and knew the appeal procedure, but ultimately did not appeal the decision internally. Chen Dep. at 180-181. He explained that he decided not to pursue the matter internally due to the COVID-19 pandemic, which had just caused the closure of the university. Chen nevertheless argues that any internal appeal would have been a "vain act."

**{¶ 71}** "A 'vain act' occurs when an administrative body lacks the authority to grant

the relief sought." *Nemazee*, 56 Ohio St.3d at 115, 564 N.E.2d 477, approving definition in *Gates Mills Investment Co.*, 59 Ohio App.2d 155, 167, 392 N.E.2d 1316. The question is not whether receiving the remedy is probable. *Id.* In other words, "[t]he focus is on the *power* of the administrative body to afford the requested relief, and not on the happenstance of the relief being granted." *Id.*

{¶ 72} In *Nemazee*, the plaintiff argued that the review process would be an "absolute exercise in futility." He claimed that, because the review committees were to be comprised of hospital administrators and staff members, he would have little or no chance of receiving a fair hearing due to their obvious bias. He also argued that he could not obtain complete relief because the committees would not award him the compensatory and punitive damages he sought. The supreme court concluded that the plaintiff did not establish the "vain act" exception, as his claim of bias related to the probability of his success, not the authority of the review process to grant him relief. While recognizing that the hospital's policy did not allow for punitive damages, the Court stated that plaintiff could not "circumvent the internal review procedures of the hospital simply by adding a claim for punitive damages." *Id.* at 115.

{¶ 73} In his appellate brief, Chen agrees that UD's Board of Trustees has the ultimate authority to grant him the relief he wants. He argues, however, that the Academic Freedom and Tenure Committee, the committee to which he would initially appeal, is the only opportunity to have a hearing on his tenure and promotion application. He asserts that his appeal would not be "heard" by the Board of Trustees.

{¶ 74} Construing the evidence in the light most favorable to Chen, we find no

evidence that participation in the UD appeal process would be a vain act. Although Chen is apparently dissatisfied with the appeal process, the Board of Trustees has the authority to grant Chen relief. Moreover, under the appeal provisions cited by Chen, the Board of Trustees' review is to be based on the record of the AFT Committee hearing, with an opportunity for argument – written, oral, or both – by the principals or their representative. Ruggiero Dep., Ex. 1, at 17. There is no genuine issue of material fact that UD's appeals process was able to grant him the relief he wanted. Consequently, the trial court properly granted summary judgment to UD on Chen's breach of contract claim based on Chen's failure to exhaust UD's administrative remedies.

{¶ 75} Chen's first assignment of error is overruled.

**C. Merits of Chen's Breach of Contract Claim**

{¶ 76} In his second assignment of error, Chen claims that the trial court erred in finding that no genuine issue of material fact existed regarding whether UD breached its contract with him. He asserts that factual issues remained as to whether UD failed to adopt criteria for evaluating tenure candidates, as required by its contract with Chen, and whether he was substantially prejudiced by UD's conduct.

{¶ 77} A breach of contract claim requires the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. *E.g., Brown v. Fukuvi USA Inc.*, 2d Dist. Montgomery No. 29294, 2022-Ohio-1608, ¶ 17. To prove a breach of contract in the context of a tenure decision, the plaintiff must establish that the university violated one or more terms of the parties' employment contract and that the plaintiff was substantially prejudiced as a result. *Saha*, 10th Dist. Franklin No. 10AP-

1139, 2011-Ohio-3824, at ¶ 26*; Fredieu*, 2021-Ohio-1953, 176 N.E.3d 324, at ¶ 36. To demonstrate substantial prejudice, the plaintiff must prove that he or she would have been awarded tenure. *Saha* at ¶ 27, citing *Logsdon v. Ohio N. Univ.*, 68 Ohio App.3d 190, 195, 587 N.E.2d 942 (3d Dist.1990).

{¶ 78} Chen's breach of contract claim was articulated in paragraph 22 of his complaint. He alleged that the "actions of UD in denying [his] application for promotion and tenure were committed arbitrarily, capriciously, and in bad faith and as such constituted a breach of the terms and conditions of the employment contract between it and Professor Chen." Compl. ¶ 22. In support of this claim, Chen alleged in his complaint:

15. According to UD, the purpose for these rules and policies governing decisions for promotion and tenure is to establish standards and objective guidelines so that candidates for promotion and tenure are treated fairly and equally throughout the evaluation process.

16. Professor Chen believes, and therefore alleges, that to the best of his knowledge, information, and belief, several faculty members in MOD evaluated under the same and similar procedures and standards as Professor Chen received ratings of "good" in the area of teaching even though their student evaluations and peer reviews were no better than, if not inferior to, those of Professor Chen. All these faculty members in MOD are Caucasian.

17. As a result, the recommendations and decision not to rate Professor

Chen as "good" in the area of teaching were made arbitrarily, capriciously, and in bad faith contrary to the express terms of university policies designed to ensure consistency and fairness in the deliberations that determine promotion and tenure.

(Footnote omitted.)

{¶ 79} During his deposition, Chen was asked to identify the provisions of the SBA PT&FR Policies and Procedures that he believed were violated by UD. Chen identified Section 2.7, relating to external reviewers of candidates for promotion or tenure. He stated, generally, that other provisions may have been violated. Chen Dep. at 19. He further contended that UD violated his employment contract by discriminating against him. *Id.* at 25. Chen acknowledges in his appellate brief that his response to UD's summary judgment motion argued that UD breached Section IV(11)(1)(B)(1) of the Faculty Handbook, namely its obligation to "adopt clear criteria and procedures for promotion and tenure." Chen App. Brief at 16, quoting Ruggiero Dep., Ex. 1 at 39.

{¶ 80} On appeal, Chen argues that the trial court erred in concluding that he did not allege a claim that UD failed to adopt clear criteria for promotion and tenure in accordance with Section IV(11)(1)(B)(1) of the Faculty Handbook. Rather, Chen claims that UD's failure to define and apply clear standards for promotion and tenure "is the crux of [his] claim." He therefore asserts that the trial court erred in granting judgment as a matter of law due to Chen's improper enlargement of his claim.

{¶ 81} At the outset, we agree with the trial court that a plaintiff cannot assert new claims or grounds for relief in response to a defendant's motion for summary judgment.

*E.g., Bradley v. Sprenger Ents., Inc.,* 9th Dist. Lorain No. 07CA009238, 2008-Ohio-1988, ¶ 8; *Scassa v. Dye*, 7th Dist. Carroll No. 02CA0779, 2003-Ohio-3480, ¶ 27; *White v. Mt. Carmel Med. Ctr.*, 150 Ohio App.3d 316, 2002-Ohio-6446, 780 N.E.2d 1054, ¶ 29-30 (10th Dist.). Ohio has adopted notice pleading, whose purpose is to ensure that the adverse party receives fair notice of the asserted claims and an opportunity to respond to them. *Scassa* at ¶ 26; *see* Civ.R. 8(A). Where a non-moving party raises new claims or grounds for relief in response to a motion for summary judgment, the movant is deprived of that fair notice. *See White* at ¶ 30.

{¶ 82} Chen's first assignment of error thus turns on the scope of Chen's breach of contract claim. Even when construing Chen's breach of contract claim broadly, we agree with the trial court that UD was not placed on notice that he was alleging that UD had failed to establish clear standards for reviewing tenure applications. There is a marked distinction between failing to create clear standards (which he now alleges) and applying established standards arbitrarily and in bad faith (which he alleged in his complaint).

{¶ 83} Moreover, even if the failure to create clear standards were alleged in the complaint, Chen failed to show that a genuine issue of material fact exists regarding UD's satisfaction of that requirement. Section 5.6 of the SBA PT&FR Policies and Procedures, titled "Tenure in the rank of associate professor," requires a candidate for tenure to the rank of associate professor to demonstrate "Good" performance in scholarship, teaching, and service. Good is defined in Section 4 as "a record that demonstrates performance at the expected levels."

{¶ 84} Section 4 details the "guidelines for the comparison of the [tenure] candidate to the candidate's peer group in the SBA and at other universities of similar or higher quality." The teaching guidelines are broken into three categories, with Category 1 focusing on "activities relating to development of the student thought classroom teaching in degree programs and advising (academic and career), and activities that demonstrate leadership in teaching." Chen Dep., Ex. B., Section 4, p. 15. It specifies that the quality of classroom teaching will be assessed through "student evaluations, peer review of teaching, evaluations of course syllabi, distribution of grades by section, copies of exams and other assignments, materials developed for the classroom, descriptions of innovative teaching techniques, and other sources as deemed appropriate." *Id.*

{¶ 85} Section 4.2.1 further indicates that UD values the ability to successfully participate in a team-teaching environment. It describes the methods by which UD would evaluate team-teaching performance, including through written comments from other members in the teaching team, peer review, and tests of student achievement. That section also lists six important characteristics of classroom teaching.

{¶ 86} Section 5.6 provides descriptions of the activities performed by tenured associate professors who demonstrate "good" performance in teaching, scholarship, and service. The document cautions, however, that "these activities are not equally valued, that a faculty member may not accomplish each activity that has been included and still receive a position tenure decision, and that, while highly unusual, performing each of these activities does not guarantee a positive tenure decision." Chen Dep., Ex. B, Section 5.6, p. 25-26. Section 5.6.1 of the SBA PT&FR Policies and Procedures

enumerates seven activities related to the "delivery" of teaching, two activities related to the "content" of teaching, and one activity related to the development of the students. Chen Dep., Ex. B., Section 5.6.1, p. 26.

{¶ 87} The provisions of the SBA PT&FR Policies and Procedures establish that UD adopted clear criteria for promotion and tenure to the rank of associate professor. While the evaluation of a candidate for promotion and tenure involves some subjective reasoning, the record is clear that UD developed specific criteria for reviewing Chen's application. *Contrast Pagano v. Case W. Res. Univ.,* 2021-Ohio-59, 166 N.E.3d 654, ¶ 53 (8th Dist.) (a reasonable jury could determine that the university was required to develop criteria for hybrid scientist candidates and breached the contract by failing to do so). Chen asserts that the "contradicting" evaluations he received showed that UD did not establish clear guidelines. However, the evidence demonstrates that UD reviewers, including UD's president, applied the various teaching evaluation guidelines in reaching their recommendations to deny Chen tenure.

{¶ 88} The trial court correctly concluded that there were no genuine issues of material fact regarding whether UD breached its contract with Chen and that UD was entitled to judgment as a matter of law. Because we conclude that no breach occurred, as a matter of law, we need not discuss whether Chen was substantially prejudiced by UD's actions.

{¶ 89} Chen's second assignment of error is overruled.

## IV. Conclusion

{¶ 90} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.